# FIFTH DISTRICT, OCTOBER, 1897.

### E. C. CHAMBERS, COUNTY JUDGE, v. J. F. GILBERT.

#### Delivered June 2, 1897.

**1. Constitutional Law—Killing Animals Diseased With Glanders.**

The provisions of the Revised Statutes of 1895, articles 4931–4934, for condemning, appraising, and killing certain animals on a finding by three disinterested citizens of the county that they are diseased with glanders, are a valid exercise of the public power, and are not in violation of section 19, article 1, of the State Constitution, nor of section 1 of the fourteenth amendment of the Federal Constitution, requiring due course and process of law.

**2. Same—Payment by County.**

Article 4934 of the Revised Statutes of 1895, providing for payment by counties of the value of diseased animals which have been condemned and killed, does not violate sections 51 and 52, article 3, of the State Constitution, providing that the Legislature shall have no power to grant or authorize the making of any grant of public money to any individual, or authorize any county to grant public money or thing of value in aid of or to any individual.

APPEAL from Limestone. Tried below before Hon. RUFUS HARDY.

*Cobb & Jackson*, for appellant.—1. Due process of law includes notice and opportunity to be heard on the part of all whose interest will be affected directly by the result of a judgment, order, or determination of anybody authorized by law to pass such judgment, order, or determination; and provision for such notice and opportunity must be statute. Scott v. Toledo, 1 Law. Rep. Ann., 688; Kuntz v. Samption, 2 Law. Rep. Ann., 655; Chauvin v. Valeton, 3 Law. Rep. Ann., 194; Railway v. Savannah, 23 S. E. Rep., 847; 96 Ga., 680; Loesch v. Koehler, 41 N. E. Rep., 326.

2. The county of Limestone is the real party in interest, and is not estopped by the acts of the county judge in the appointing of assessors and ordering the killing of the horses.

3. The funds of the county are not subject to disposal by the Legislature except through instrumentalities provided for or allowed by article 3, sections 51 and 52, of the Constitution. Conlin v. San Francisco, 46 Pac. Rep., 279.

*Kimbell Bros. & Blackmon,* for appellees.—1. Due process includes notice, but where the State takes the initiative and the owner acquiesces there is no one in a position to make the question. Cool. Const. Lim., 3 ed., 180, 190, *pp. 163, 180.

2. The State is plaintiff in the condemnation proceedings, and is bound thereby, and will pay the assessed value out of public money collected in taxes from the inhabitants of the county for whose benefit the proceedings were had; and the officers named in the statute are agents of the State to execute its will as expressed in the statute. Weaver v. Scurry County, 28 S. W. Rep., 836; Dimmitt County v. Frazier, 27 S. W. Rep., 829; In re Pennsylvania Hall, 5 Pa. St., 204; ^ Am. and Eng. Encyc. of Law, 721; Safford v. Board of Health, 67 N. W. Rep., 1099; 33 L. R. A., 300; State v. Field, 24 S. W. Rep., 752.

3. Making just compensation for private property destroyed by law for the public good is not inhibited by article 3, sections 51 and 52, of our organic law. These sections inhibit the giving of the public money; and the State is not thereby confined to paying legal obligations, but may use the public funds to pay claims which rest solely on moral or equitable grounds, or such as the State ought in good conscience to pay. Cool. Const. Lim., 142, 257, *pp. 129, 226.

FINLEY, ASSOCIATE JUSTICE.—Appellee, owning horses diseased with glanders or farcy, presented to appellant, on January 27, 1896, his affidavit of that fact. Appellant appointed three citizens to examine such animals and report their condition and value, if diseased. Being first sworn, they examined said horses and found five of them affected with glanders, or farcy, and in such condition worth $150, and so reported to appellant. Whereupon he ordered the sheriff to destroy said five horses, and the sheriff did so. All the foregoing acts were in substantial compliance with title 102, chapter 2, of the Revised Statutes of 1895. Appellee then requested of appellant his order to the county clerk for a warrant on the county treasurer in the sum of $150, in payment for said animals. Appellant refused to comply; and appellee filed his suit, setting forth the foregoing facts, and praying for mandamus against appellant to compel him to issue such order. Appellant set up as defense to the suit the unconstitutionality of the said statute. The proof showed the animals to be worth $150, the sum assessed. There was judgment for appellee, and appellant appealed and filed his assignments of error.

*Opinion.*—Appellant attacks the statute under which the condemnation proceeding of plaintiff's animals was had, as being unconstitutional.

The statutory provisions attacked are as follows:

"Article 4931. If at any time it shall come to the knowledge of any county judge of any county in this State, by affidavit of any credible citizen of his county, stating that affiant has reason to believe and does believe that glanders or farcy exists among any horses, mules, jacks, or jennets in said county, naming owner or owners of such animal or animals

so infected, if known, if unknown so stating, it shall be the duty of such county judge, upon the filing of said affidavit, to immediately appoint three disinterested and intelligent citizens of said county, whose duty it shall be to carefully and minutely examine said animal or animals so reported to be diseased with glanders or farcy; said three citizens before entering upon the duties required of them by this chapter shall take an oath, before some officer legally qualified to administer oaths, that they will discharge their duties as prescribed by this chapter in a fair and impartial manner.

"Article 4932. If, after carefully and minutely examining the animal or animals so reported to be affected with glanders or farcy, said three citizens shall be of the opinion that the animal or animals so examined by them are diseased with glanders or farcy, they shall condemn the same, and it shall be their duty to appraise such animal or animals at their just and full value at the time of such examination and condemnation, and shall forthwith report their action in writing to the county judge, giving in said report the number of animals condemned, if any, the owner or owners of same if known, and if unknown so stating it, with the appraised value of same. But if the said citizens have any reasonable doubt as to the diseased animals being affected with glanders or farcy, before condemning as above provided for, they shall require the owner or owners to have said diseased animals separated from contact with all other animals subject to contagion, for a reasonable time, and when they are fully satisfied that the disease is glanders or farcy, then they shall proceed to condemn and destroy said animals as provided for in this article.

"Article 4933. The county judge, upon the receipt of the report named in the preceding article, shall issue his order to the sheriff or any constable of his county, commanding him to seize said diseased animal or animals and take same to some secluded place and kill them and bury or burn the carcass.

"Article 4934. After the said diseased animal or animals are killed, as provided in the preceding article, it shall be the duty of the county clerk, upon the written order of the county judge, to issue a warrant or warrants of the county, payable out of the general revenue, in favor of the owner or owners of said animal or animals so killed, for the amount of the value, as diseased, if the animal had any value, as appraised by said citizens who examined and condemned same. The sheriff or constable killing, burning, or burying said animal or animals shall be paid by the county such sum as the Commissioners Court thereof may determine their services worth."

It is first urged that the procedure authorized by statute is not "due course of the law of the land," as required by section 19, article 1, of the Constitution of this State, and is not "due process of law" within the meaning of the fourteenth amendment to the Constitution of the United States.

Section 19, article 1, of our Constitution provides: "No citizen of this State shall be deprived of life, liberty, property, privileges, or immu-

nities, or in any manner disfranchised, except by due course of the law of the land."

Section 1 of the fourteenth amendment to the Constitution of the United States prohibits the States from depriving "any person of life, liberty, or property without due process of law."

It is not denied, and could not be successfully, that the State, in the exercise of its police power, may provide for the condemnation and destruction of animals afflicted with dangerous, infectious or contagious diseases, but the contention is that the procedure provided by statute does not possess sufficient judicial characteristics to conform to constitutional requirements. These constitutional provisions are intended to protect the individual citizen from the arbitrary exercise of governmental powers, unrestrained by the principles of right and justice. Bank of Columbia v. Okely, 4 Wheat., 235, 244.

There is an inherent power in the government to take private property for public use; the power is not conferred by constitutions, but usually constitutions place restraints upon the exercise of such power. Cool. Const. Lim., 6 ed., 435. Our Constitution restrains the exercise of this power by requiring adequate compensation to be made to the owner when his property is thus taken, damaged, or destroyed for public use, without his consent. Section 17, article 1.

Mr. Cooley, in discussing the meaning of "due process of law" as used in constitutions, says we are to test the validity of the acts of government interfering with the title or enjoyment of a person's property by those principles of civil liberty and constitutional protection which have become established in our system of laws, and not generally by the rules that pertain to the form of procedure merely. * * * In judicial proceedings the law of the land requires a hearing before condemnation, and judgment before dispossession; but when property is appropriated by the government to public uses, or the legislature interferes to give direction to its title through remedial statutes, different considerations from those which regard the controversies between man and man must prevail, different proceedings are required, and we have only to see whether the interference can be justified by the established rules applicable to the special case.

The act here in question does not provide for the taking of private property for public use, contemplated by section 17, article 1, of our Constitution (State v. Schlammer, 42 La. Ann., —, 10 L. R. A., 135); but it provides for the condemnation and destruction of private property, to the end that the general welfare may be preserved. It is the exercise of the sovereign power of police, intended to protect the public from the spread of a disease among domestic animals, which is usually fatal in its effects, and which may extend to people with fatal results. It is the same power that underlies quarantine laws and regulations, and these may go to the extent of authorizing summary destruction of private property when infected with disease germs. Cool. Const. Lim., 720, citing Harrison v. Baltimore, 1 Gill., 264; Van Wormer v. Albany, 15 Wend.,

262; Coe v. Shultz, 47 Bart., 64; Raymond v Fish, 51 Conn., 80. It is the same power that the government may and does exercise by summary destruction of private property to prevent the spread of fire and a general conflagration. Cool. Const. Lim., 739, and cases cited in note 1. There is nothing in our Constitution which requires as preliminary to the exercise of such power a judicial trial of the issue as to the necessity of such summary action, and the ascertainment and awarding of damages to result therefrom.

In the Louisiana case, above cited, an ordinance of the city of New Orleans made it unlawful to excavate or sink a well on premises used as a bakery or baker shop, and provided for the filling up of wells existing upon such premises. The court treated the ordinance as the exercise of the police power of the State for the protection of public health, the object being to prevent the use of well water by bakers in making bread for the public. It was held that the power there exercised was not within the constitutional restriction prohibiting the taking of property without "due process of law." The court, in discussing the question, says: "It is not, perhaps, for us to say whether the means adopted to accomplish this purpose are the best and most efficient and least injurious to private interest. These are matters of legislative determination. It is sufficient, for judicial satisfaction, if the means are appropriate to the end, will operate towards its accomplishment, are so intended in good faith, and are not unwarrantably and unnecessarily oppressive."

In the case of Dent v. West Virginia, the statute of the State required that ever practitioner of medicine should obtain a certificate from the State board of health that he was a graduate of a reputable medical college, and made it a criminal offense to practice medicine without obtaining such certificate. A doctor, who had been practicing several years previous to the enactment of the statute, and who was not a graduate of a medical college, raised the question as to the validity of the statute, urging that he was thereby deprived of his privilege to practice his profession without "due process of law." The statute was upheld as the exercise of the police power of the State, and as to the method therein provided for the accomplishment of the end, it was held to be process or proceedings adapted to the nature of the case, and valid. 129 U. S., 114.

In the case before us, the proceeding for condemnation of animals afflicted with the dangerous and infectious diseases named, their destruction, and the assessment and payment of damages to the owner, does not possess the elements of a judicial trial; but the proceeding is appropriate and effectual in the particular case. It is the exercise of an inherent power in the government, and the manner in which the power is to be exercised violates no principle of our State or Federal Constitution.

It is also insisted that the Legislature is without power to provide for payment of the damages out of funds belonging to counties, as is done by this statute. It is claimed that sections 51 and 52, article 3, are violated by this statute. These articles are as follows:

"Section 51. The Legislature shall have no power to make any grant,

or authorize the making of any grant of public money to any individual, association of individuals, municipal, or other corporation whatsoever; provided, however, the Legislature may grant aid to the establishment and maintenance of a home for indigent and disabled confederate soldiers or sailors who are or may be bona fide residents of the State of Texas, under such regulations and limitations as may be provided by law; provided, that such grant shall not exceed the sum of $100,000 for any one year; and provided, further, that the provisions of this section shall not be construed so as to prevent the grant of aid in case of public calamity.

"Section 52. The Legislature shall have no power to authorize any county, city, town, or other political corporation or subdivision of the State to lend its credit or to grant public money or thing of value in aid of or to any individual, association, or corporation whatsoever; or to become a stockholder in such corporation, association, or company."

There is nothing in either of these provisions in conflict with the statute in question. Weaver v. Scurry County, 28 S. W. Rep., 836; Dimmit County v. Frazier, 27 S. W. Rep., 829. The county is a mere subdivision of the State, and is subject to its legislative control in all such respects.

*Affirmed:*

Writ of error denied.