# Commonwealth *v.* Plymouth Coal Company, Appellant.

*Constitutional law—Due process of law—Taking of property without compensation—Mines and mining—Pillars of coal between mines—Police power—Act of June 2, 1891, art. III, sec. 10, P. L. 176.*

Section 10 of art. III of the Anthracite Mining Act of June 2, 1891, P. L. 176, which provides that "it shall be obligatory on the owners of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, etc.," is a valid exercise of the police power justified by the circumstances and does not violate the fourteenth amendment of the federal constitution as a deprivation of property "without due process of law," nor sec. 10 of art. I of the constitution of Pennsylvania which provides that private property shall not be taken or applied to public use without authority of law, or without just compensation being first made or secured.

Argued April 10, 1911.   Appeal, No. 222, Jan. T., 1911,

by defendant, from decree of C. P. Luzerne Co., Oct. T., 1909, No. 16, on bill in equity in case of Commonwealth upon the application of David T. Davis, Inspector of Mines of the Ninth District of the First Anthracite Coal Inspection District of Pennsylvania, acting in behalf of the Commonwealth, v. Plymouth Coal Company. Before FELL, C. J., MESTREZAT, POTTER, ELKIN and MOSCHZISKER, JJ. Affirmed.

Bill in equity for an injunction.

FERRIS, J., filed the following opinion:

The Anthracite Mining Act of June 2, 1891, P. L. 176, is entitled, "An act to provide for the health and safety of persons employed in and about the anthracite coal mines of Pennsylvania and for the protection and preservation of property connected therewith."

Section 10 of art. III of this act reads as follows:

"It shall be obligatory on the owners of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, of such width, that taken in connection with the pillar to be left by the adjoining property owner, will be a sufficient barrier for the safety of the employees of either mine in case the other should be abandoned and allowed to fill with water; such width of pillar to be determined by the engineers of the adjoining property owners, together with the inspector of the district in which the mine is situated, and the surveys of the face of the workings along such pillar shall be made in duplicate and must practically agree. A copy of such duplicate surveys, certified to, must be filed with the owners of the adjoining properties, and with the inspector of the district in which the mine or property is situated."

The bill avers that the plaintiff, being the mine inspector for the proper district, gave notice to the defendant company of a meeting to be held, at which the said company was notified to instruct its engineer to be present and meet

the engineer of the Lehigh & Wilkes-Barre Coal Company, the owner of an adjoining mine, for the purpose of determining the width of a barrier pillar to be left by the said two coal companies between their properties as required by the mining act, but that the defendant company refused to permit its engineer to attend such meeting, and, generally, refused to leave any barrier pillar between its workings and those of the Lehigh & Wilkes-Barre Coal Company.

The prayers are (1) for an injunction enjoining the defendant from working its mines or coal property adjoining the mines or coal property of the Lehigh & Wilkes-Barre Coal Company without leaving a barrier pillar of coal of the thickness or width of at least seventy feet in each vein; (2) requiring the defendant to file with the mine inspector a certified copy of a survey as required by law, and (3) for general relief.

To this bill the defendant has filed an answer admitting the plaintiff's averments of fact to be true, but (1) denying the necessity for such a barrier pillar, and (2) averring that sec. 10 of art. III of the mining act is unconstitutional.

If the constitutionality of this provision be conceded for the purpose of discussion, and if the question of the necessity for any barrier pillar at all between these properties may be regarded as an open one, the decision of that question would seem to be committed by the statute to the tribunal of experts thereby constituted, viz., the mine inspector and the engineers of the owners of the adjoining coal properties. The purpose of the enactment is to secure the safety of the workmen in the mines. The law declares that "it shall be obligatory" on the mine owners to leave such a barrier pillar as the tribunal of mine experts referred to shall determine to be sufficient for that purpose. It is for them to fix its width. Until they say that none at all is needed for the safety of the men, the obligation imposed by the statute remains.

It might, perhaps, be well argued that the legislature did not intend to impose upon the owners the burden of leaving a boundary pillar of unmined coal where it clearly

appears to be unnecessary for the safety of the employees. If none at all were needed it would seem idle for the inspector and engineers to fix a width of, say, one foot, for the sake, merely, of literal compliance with the statutory obligation of leaving a pillar of some width. If, therefore, we may apply the maxim that the law does not require a vain thing, there is room for the construction that, in vesting in the inspector and engineers the power to determine how wide the barrier pillar should be to secure safety, the intent of the lawmaking power was to also empower them to say, if such be the fact, that the safety of the men does not require a barrier pillar of any width at all. But, be that as it may, it is evident that the act does not warrant a mine owner in refusing to permit his engineer to participate in determining the question of the width of, or the need for, a barrier pillar simply because he, the mine owner, does not consider one necessary. In our opinion, the law requires such a pillar to be left, unless the inspector and engineers, after due examination of the premises and consideration of the subject, determine that none is needed to secure the safety of the men employed in either mine in case the other should be abandoned and allowed to fill with water.

The constitutionality of the boundary pillar provision of the act is attacked upon two grounds, (1) because it is said to violate sec. 10 of art. I of the Pennsylvania constitution, which provides that private property shall not be taken or applied to public use without authority of law and without just compensation being first made or secured; and (2) because it is claimed to be in conflict with the fourteenth amendment to the federal constitution, which provides that no state shall deprive any person of life, liberty or property without due process of law.

The defendant contends that, by requiring adjoining mine owners to leave a barrier pillar of coal between their workings, the act deprives them of a property right (viz., the right to mine such coal) without compensation therefor and without due process of law.

Both the right of eminent domain and the police power of the state are attributes of sovereignty. They are inherent rights of the supreme power, founded upon the social compact and essential to any form of government.

In our jurisprudence the right of eminent domain is defined to be "the power of the state to apply private property to public purposes on payment of just compensation to the owner:" 10 Am. & Eng. Ency. of Law (2d ed.), 1047. The provision for payment of compensation, however, is no part of the power itself but a limitation upon its use imposed by the constitution: United States v. Jones, 109 U. S. 513 (3 Sup. Ct. Repr. 346).

"The police power of the state," says Judge ORLADY in Com. v. Beatty, 15 Pa. Superior Ct. 5, 15, "is difficult of definition, but it has been held by the courts to be the right to prescribe regulations for the good order, peace, health, protection, comfort, convenience and morals of the community, which does not encroach on a like power vested in congress or state legislatures by the federal constitution, or does not violate the provisions of the organic law; and it has been expressly held that the fourteenth amendment to the federal constitution was not designed to interfere with the exercise of that power by the state (citing Powell v. Penna., 127 U. S. 678 (8 Sup. Ct. Repr. 992, 1257); Powell v. Com., 114 Pa. 265). Its essential quality as a governmental agency is that it imposes upon persons and property burdens designed to promote the safety and welfare of the public at large. The principle that no person shall be deprived of life, liberty or property, without due process of law, was embodied, in substance, in the constitutions of nearly all, if not all, of the states at the time of the adoption of the fourteenth amendment, and it has never been regarded as incompatible with the principle, equally vital, because equally essential to the peace and safety of society, that all property in this country is held under the implied obligation that the owners' use of it shall not be injurious to the community (citing Boston Beer Co. v. Mass., 97 U. S.

25). . . . (at page 17) 'The State still retains an interest in his (the wage earner's) welfare, however reckless he may be. The whole is no greater than the sum of all its parts, and when the individual health, safety and welfare are sacrificed, the State must suffer.' This declaration was adopted by the United States supreme court in Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. Repr. 383), invalidating a state statute which limited the employment of men in underground mines, smelting works, etc., to eight hours a day."

By the decision from which we have just quoted, it was held that the Act of April 29, 1897, P. L. 30, forbidding the employment of adult women for more than twelve hours a day, etc., was not in conflict with the constitution of Pennsylvania nor with the federal constitution, but was a valid exercise of the police power in the interest of the public health, even though it referred to a particular class of the public, viz., adult women engaged in the kind of employment mentioned in the act, and even though it did indirectly restrain the employee's freedom of contract.

So also, in Com. v. Brown, 8 Pa. Superior Ct. 339, it was said by Judge RICE (pp. 351, 352) that "in the exercise of the police power of the state, it (the legislature) may enact laws in the interest of public morals, and to protect the lives, health and safety of persons following specified callings, and thus indirectly interfere with freedom of contract," i. e., with individual liberty and the right to acquire and use property. But, of course, such classification with reference to occupation must be reasonable and dictated by a necessity springing from manifest peculiarities clearly distinguishing those of one class from each of the other classes, and imperatively demanding legislation for each class separately that would be useless and detrimental to the others. Laws enacted in pursuance of such classification and for such purposes are, properly speaking, neither local nor special. They are general laws because they apply alike to all that are similarly situated as to their peculiar necessities: Ayars' App., 122

Pa. 266, 281; Com. v. Gilligan, 195 Pa. 504, 510.  The point we desire to emphasize here is, that, to be a valid exercise of the police power in the interest of the public safety, a statute need not necessarily be applicable to the whole body of the general public but may affect a specified class only.  Thus in Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. Repr. 383) it was said by our highest court, speaking by Mr. Justice BROWN (p. 393) that, " while the business of mining coal and manufacturing iron began in Pennsylvania as early as 1716, and in Virginia, North Carolina and Massachusetts even earlier than this, both mining and manufacturing were carried on in such a limited way and by such primitive methods that no special laws were considered necessary prior to the adoption of the Constitution for the protection of the operatives, but, in the vast proportions which these industries have since assumed, it has been found that they can no longer be carried on with due regard to the safety and health of those engaged in them, without special protection against the dangers necessarily incident to these employments.  In consequence of this, laws have been enacted in most of the States designed to meet these exigencies and to secure the safety of persons peculiarly exposed to these dangers. . . .  In (States) where mining is the principal industry, special provision is made for the shoring up of dangerous walls, for ventilation shafts, means of signaling the surface, for the supply of fresh air, and the elimination of dangerous gases (etc., etc.) . . . .  These statutes have been repeatedly enforced by the courts of the several States; their validity assumed, and, so far as we are informed, they have been uniformly held to be constitutional. "  Mr. Justice BROWN then refers to certain cases where such laws were held to be constitutional under the police power, and among them, to Com. v. Bonnell, 8 Phila. 534, in which the late Judge HARDING of this court held the Mine Ventilation Act of March 3, 1870, P. L. 3, to be a constitutional exercise of the police power.

So also, in Chicago W. & V. Coal Co. v. People, 181 Ill.

270 (54 N. E. Repr. 961), a provision in the mining act of that state requiring the mine owner to pay the fees for the inspection of mines by a state inspector was held to be valid and constitutional under the police power, though its effect was to deprive the owner of property, to-wit, the money required to be paid as fees. It was there said, as it might equally well be said in the case at bar, "the mining of coal is recognized as a dangerous and hazardous business and is a productive industry of the greatest importance. For many years in this State many thousands of men have been engaged in that character of work and a proper safeguard of their lives and health is a matter of so great interest and necessity that no subject can be mentioned where there is a more positive necessity for the exercise of the police power than in seeking to subserve their safety. . . . (Speaking of the payment of the inspector's fees): The expense thus incurred is imposed because of the peculiar dangers of the surrounding situation and subserves not only the interest of the miners but alike protects the mine owner; and hence the payment of the fee (in this case, the leaving of coal for a barrier pillar) can be properly imposed upon the mine owner without violating any provision of the Constitution." That case was followed by Consolidated Coal Co. v. People, 186 Ill. 134 (57 N. E. Repr. 880), where it was held that the same mining act (which, in essentials, is similar to our own) did not deny to mine operators the equal protection of the laws nor take their property without due process of law in violation of the fourteenth amendment of the federal constitution.

Still closer in its facts to the case now before us is Mapel v. John, 42 W. Va. 30 (24 S. E. Repr. 608, 32 L. R. A. 800). There the mining act in question provided, inter alia, that "no owner or tenant of any land containing coal shall open, or sink, or dig, excavate or work in any coal mine or shaft on such land, within five feet of the line dividing said land from that of another person or persons, without the consent in writing of every person inter-

rested in, or having title to such adjoining lands," etc. This provision was claimed to be unconstitutional as being an infringement of the rights of private property. It was held to be a proper exercise of the police power and not unconstitutional in the respect claimed, the court saying: "This is no undue assumption of the right to apply the police power to a subject which does not fall within it; for regulations (on this and other subjects mentioned) have long been recognized as wholesome and reasonable, and as fit subjects for the exercise of the police power, as tending to preserve the rights of the citizen and promote the welfare of the Commonwealth. The mining of coal is one of the largest industries carried on in the State. In mining, proper support and ventilation are necessary . . . . for the health and safety of the miner engaged in a dangerous employment, and for that reason the public welfare requires it. . . . This rib of solid coal not to be mined into by either of the adjoining owners was to be contributed by each in equal parts for the mutual benefit of each, for the protection of the surface, to secure independent systems of ventilation, drainage and workings, and in aid of an industry so great and widely diffused that the State as a whole is interested therein. . . . This regulation works no hardship on one for the benefit of another, but is impartial, just and reasonable, imposing a common burden for the benefit of all such owners."

The police power is distinguished from the right of eminent domain in that the state, by exercising the latter right, takes private property for public use, thereby entitling the owner to compensation under the constitution, while the police power, founded as it is on the maxim "sic utere tuo ut alienum non lædas," is exerted to make that maxim effective by regulating the use and enjoyment of property by the owner, or, if he is deprived of his property altogether, it is not taken for public use, but rather destroyed in order to conserve the safety, morals, health or general welfare of the public, and in neither case

is the owner entitled to compensation, for the law either regards his loss as damnum absque injuria, or considers him sufficiently compensated by sharing in the general (and, in this case, also the specific) benefits resulting from the exercise of the police power: 22 Am. & Eng. Ency. of Law (2d ed.), 916, and cases there cited. For example, in the case at bar, the state does not take the coal in the barrier pillar and convert it to a public use, but leaves it in the ownership and possession of the adjoining mine owners. The coal itself is not taken. The property right affected by the statute is not ownership, but use, of the material thing—the right to mine it out. Nor does the state take that right for public use. The act does not transfer the right to mine out the coal from the owner to some one else, for the public benefit, but prohibits that right from being exercised by anyone—that is, destroys it, to prevent a possible calamity, to-wit, the flooding of mines, and to protect the lives of that class of the general public whose safety would be thereby endangered, and, incidentally, to conserve the mine property of the owners themselves. In this latter aspect of the case the destruction of the right to mine the coal bears some analogy to the destruction of buildings to prevent another sort of calamity—a conflagration. True, in the latter case the disaster is imminent, while here it is uncertain; so that perhaps a closer analogy in that respect would be the statute law requiring fire escapes to be placed on certain structures in order to avert a possibly remote catastrophe. Such laws were held to be a valid exercise of the police power of the state in Fidelity Insurance Trust & Safe Dep. Co. v. Fridenberg, 175 Pa. 500, 507, 508.

The enactment here in question does not authorize a taking of property for public use, is not an exercise of the right of eminent domain, and, therefore, is not unconstitutional, because of failure to provide for compensation; but it regulates the use of tangible property—the coal in the pillar—by requiring the owner to use it (negatively by leaving it unmined) as not to injure the rights of others,

or, in another aspect of the case, does not affect tangible property at all, but destroys an intangible property right (that of mining out the pillar coal) in the interest of the public safety. In either case it is, in our opinion, an exercise of the police power, justified by the circumstances, and not violative of either the state or the federal constitution.

By agreement of counsel this case is to be determined as upon final hearing, the depositions taken for use on motion to continue the preliminary injunction to be considered as evidence produced in open court on such hearing. In pursuance of this agreement of counsel, and upon admissons contained in the answer, and from the testimony, we make the following

### FINDINGS OF FACT.

1. The plaintiff is the mine inspector of the ninth subdistrict of the first anthracite coal inspection district of Pennsylvania; and the Plymouth Coal Company, defendant, and the Lehigh & Wilkes-Barre Coal Company are mining corporations of this commonwealth, each employing more than ten persons.

2. The said two coal companies are the owners, proprietors, lessees and occupiers of adjoining coal properties in the borough of Plymouth, Luzerne county, Pennsylvania, and within the limits of the said subdistrict of the first anthracite coal inspection district.

3. The plaintiff, as mine inspector, gave to the president of the defendant company a written notice dated August 31, 1909, stating that a meeting would be held at the former's office on September 2, 1909, for the purpose of deciding upon the width of a boundary pillar of coal to be left between the coal properties of the said two companies, pursuant to the provisions of sec. 10 of art. III of the anthracite mining act of 1891, a copy of said section being embodied in the notice, and requested that the defendant's engineer be instructed to attend such meeting to consult with the engineer of the Lehigh

& Wilkes-Barre Coal Company for the purpose afore-said.

4. The defendant company declined to permit its engineer to attend such meeting, and refuses to leave any unmined coal as part of a boundary pillar between its coal property and that of the Lehigh & Wilkes-Barre Coal Company, claiming a legal right to mine to the boundary line of its property, and denying the constitutionality of sec. 10, art. III, of the said mining act.

5. No determination of the width of, or necessity for, such boundary pillar had been made, as required by the act, up to the time of filing the bill in this case, nor has it been made since, so far as the court is advised.

### CONCLUSIONS OF LAW.

1. Sec. 10 of art. III of the Anthracite Mining Act of June 2, 1891, P. L. 176, is a valid exercise of the police power of the state, and is not in conflict with the constitution of the United States nor with the constitution of Pennsylvania.

2. That enactment requires a boundary pillar of coal to be left unmined between the mine workings of the defendant company and the Lehigh & Wilkes-Barre Coal Company, of such width as the proper mine inspector and the engineers of the said two companies shall deem necessary to the safety of the men employed in either mine in case the other should be abandoned and allowed to fill with water, unless, after due investigation and consultation, they shall decide that no such barrier pillar is required to insure the safety of such employees upon the happening of the contingency stated in the act. The same act requires the making by said engineers and inspector of duplicate surveys of the face of the workings along such pillar, and the filing of a copy of the same with the owners of the adjoining properties and with the mine inspector.

3. The preliminary injunction heretofore granted should be continued until the width of such a boundary pillar, or the absence of necessity for one, shall have been

determined by said inspector and engineers and surveys made and filed as required by the act, or until they shall duly decide that no such pillar is needed for the safety of the employees of either mine.

4. The costs of this proceeding should be paid by the defendant.

*Error assigned* was decree entered in accordance with the conclusions of law.

*Wm. C. Price* and *F. W. Wheaton*, with them *John T. Lenahan*, for appellant.—Sec. 10 of the Act of June 2, 1891, P. L. 176, violates the provisions of the fourteenth amendment to the federal constitution, which provides that "no state shall deprive any person of life, liberty or property without due process of law"; also that it violates sec. 10 of art. I of the constitution of Pennsylvania, which provides that private property shall not be taken or applied to public use without authority of law or without full compensation first made or secured: Philadelphia v. Scott, 81 Pa. 80; St. Louis v. Hill, 116 Mo. 527 (22 S. W. Repr. 861, 21 L. R. A. 226); Rutherford's Case, 72 Pa. 82; Hancock v. Wyoming Borough, 148 Pa. 635; Kuntz v. Sumption, 117 Ind. 1 (19 N. E. Repr. 474, 2 L. R. A. 655); San Mateo County v. R. R. Co., 13 Fed. Repr. 722; Stuart v. Palmer, 74 N. Y. 183; In re Jensen, 28 N. Y. Misc. 378 (59 N. Y. Supp. 653).

*Evan C. Jones*, with him *Thomas H. Atherton*, for appellee.—The act is constitutional: Holden v. Hardy, 169 U. S. 366 (18 Sup. Ct. Repr. 383); Com. *v.* Coal Co., 29 Leg. Int. 213; Com. v. Kingston Coal Co., 6 Kulp, 241; Maple v. John, 42 W. Va. 30 (24 S. E. Repr. 608); Powell v. Penna., 127 U. S. 678 (8 Sup. Ct. Repr. 992, 1257); Boston Beer Co. v. Massachusetts, 97 U. S. 25; Howells Mining Co. v. Grey, 148 Ala. 535 (42 So. Repr. 448); Consolidated Coal Co. v. People, 186 Ill. 134 (57 N. E. Repr. 880).

PER CURIAM, May 23, 1911:

The decree appealed from is affirmed on the opinion of Judge FERRIS.