KILPATRICK et al. v. COMPENSATION CLAIM BOARD et al. (No. 1568.)

(Court of Civil Appeals of Texas. El Paso. Jan. 31, 1924. Rehearing Denied March 6, 1924.)

1. States ⬅184—Compensation for loss from being prevented from growing cotton in noncotton growing zone held authorized by statute.

Act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41) § 9 (Vernon's Ann. Civ. St. Supp. 1922, art. 4475q), giving a different procedure of the Compensation Claim Board in fixing the "compensation" for being prevented from growing cotton by establishment of noncotton growing zones, than that provided in section 7 for fixing the "damages" for cotton destroyed, and fixing the time for filing "claims for compensation for losses incurred under previous acts," authorizes compensation for such losses under Acts 35th Leg. (1917) 3d Called Sess. c. 11, and Acts 36th Leg. (1919) c. 41 (Vernon's Ann. Civ. St. Supp. 1922, arts. 4475a–4475k), though they provide only for payment of "damages" to those whose cotton is destroyed and Acts 36th Leg. (1920) 3d Called Sess. c. 42, which first made provision for those prevented from growing cotton, was not retrospective, especially in view of Acts 38th Leg. (1923) 3d Called Sess. c. 25, appropriating money for the payment of such claims, and the board's allowance of numerous claims for such compensation.

2. Statutes ⬅219—Compensation Claim Board's interpretation of statute entitled to due weight in case of doubt.

The courts are not bound by the Compensation Claim Board's construction of Act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41), as authorizing compensation for losses from being prevented from growing cotton in noncotton growing zones established under previous acts, but the Board's interpretation, as evidenced by its administration of the law, is entitled to due weight, in case of doubt as to the proper construction thereof.

3. States ⬅119—Compensation for losses from being prevented from growing cotton in noncotton growing zones held not unconstitutional gift or gratuity.

Act March 10, 1919 (Acts 36th Leg. c. 41), providing for the establishment of noncotton growing zones in areas infested by the pink boll worm, was an exercise of the state's police power entailing no legal liability, as in the case of the exercise of the right of eminent domain, to compensate the owner of land for destruction or restriction in the use of his property, but a moral obligation to pay therefor may arise, and claims so recognized and paid by the state, as authorized by act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41), providing for compensation for losses from being prevented from growing cotton under previous acts, are not gifts or gratuities prohibited by Const. art. 3, § 51, or article 16, § 6.

4. States ⬅120—Obligation to reimburse landowners prevented from growing cotton in certain zones held not state "debt" within constitutional inhibition.

The obligation created by Act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41), to reimburse landowners for losses from being prevented from growing cotton in noncotton growing zones, established under Acts 35th Leg. (1917) 3d Called Sess. c. 11, Acts 36th Leg. (1919) c. 41, and Acts 36th Leg. (1920) 3d Called Sess. c. 42, enacted to prevent the spread of the pink boll worm, is not a "debt" created by or on behalf of the state, within the inhibition of Const. art. 3, § 49.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Debt.]

5. States ⬅119—Act held not unconstitutional as "granting public money to individuals" or on claims not provided for by pre-existing law.

Act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41), providing for compensation for losses from being prevented from growing cotton in noncotton growing zones, established under previous acts to prevent the spread of the pink boll worm, but appropriating no funds therefor, is not obnoxious to Const. art. 3, § 51, prohibiting grants of public money to individuals, etc.; article 16, § 6, prohibiting appropriations for private or individual purposes, or article 3, § 44, prohibiting grants of public money to individuals on claims not provided for by pre-existing law.

6. States ⬅191(2)—Suit held not one against state without its consent.

In view of Act Sept. 1, 1921 (Acts 37th Leg. 1st Called Sess. c. 41) § 9, granting dissatisfied claimants of compensation for losses from being prevented from growing cotton in noncotton growing zones the right to resort to the district court to review the Compensation Claim Board's rejection of a claim, such a suit is not one against the state without its consent.

Appeal from District Court, Presidio County; C. R. Sutton, Judge.

Action by D. D. and J. J. Kilpatrick against the Compensation Claim Board and the members thereof. From a judgment of dismissal, plaintiffs appeal. Reversed and remanded.

Mead & Metcalfe, and H. H. Kilpatrick, all of Marfa, for appellants.

W. A. Keeling, Atty. Gen., and Bruce W. Bryant, Asst. Atty. Gen., for appellees.

HIGGINS, J. Appellants brought this action in the district court of Presidio county against the Compensation Claim Board to establish a claim for $8,000 for certification to the comptroller as the basis for a warrant upon the state treasurer in favor of the plaintiffs for said sum. The action constitutes an appeal from an order of the Compensation Claim Board rejecting a claim for compensation by appellants for losses sustained in being prevented from growing cot-

ton in the year 1919 in a noncotton growing zone established as hereinafter indicated. General and special exceptions to the petition were sustained and the suit dismissed.

The facts disclosed by the petition are as follows: The individual defendants constitute the Compensation Claim Board created by virtue of chapter 41, Acts of the Thirty-Seventh Legislature, First Called Session, approved September 1, 1921. Plaintiffs own a tract of irrigated farming land situate in the Rio Grande Valley in the southern portion of Presidio county upon which they ·began to grow cotton prior to 1917. Acting upon the report of the commissioner of agriculture of the state, and based upon the fact that the pink boll worm had been discovered in the cotton fields of Brewster and Presidio counties, the Governor on April 9, 1919, issued a proclamation creating a noncotton growing zone embracing all of said counties, wherefore it became unlawful to plant or raise cotton in said counties, and the plaintiffs in good faith obeyed such proclamation and refrained from growing cotton in such district. On January 20, 1922, plaintiffs in due form presented to the Compensation Claim Board their claim for damages arising out of the fact that they were prevented from growing cotton upon their land, which was heard and rejected by the Board on December 19, 1922. The reason assigned for rejecting the claim as shown by the Board's order is as follows:

"The Board finds that said applicant grew cotton in the year 1919 after the proclamation of the Governor. Some h'e had planted before such proclamation, all of which was cultivated, and destroyed in the fall by agents of the department of agriculture. The acreage planted before the Governor's· proclamation was paid for. Therefore we think he is not entitled to any compensation, because he did not in good faith obey the proclamation."

The petition averred that the Board was mistaken in the findings indicated in the quoted portion of its order and that plaintiffs did not plant or grow cotton during the year 1919, and no cotton planted or owned by them had been destroyed as found by the Board. The necessary facts were alleged showing that plaintiffs had sustained a loss of $8,000 by being prevented from growing cotton upon their land during the year 1919.

The several acts of the Legislature pertaining to the menace of the pink boll worm to the cotton growing industry of the state are as follows: Chapter 11, Acts 35th Leg. 3d Called Sess., approved October 3, 1917; chapter 41, Acts 36th Leg. Reg. Sess., approved March 10, 1919, effective the same date; chapter 42, Acts 36th Leg. 3d Called Sess., approved June 19, 1920; chapter 41, Acts 37th Leg. 1st Called Sess., approved September 1, 1921. See Vernon's Ann. Civ. St. Supp. 1922, arts. 4475a–4475t.

The appellants contend that this action may be maintained under the act of 1921. Appellee asserts that neither this nor any other act provides for the assessment of compensation to persons who were prevented from growing cotton in the year 1919, by virtue of the Governor's proclamation, made under the law in question, and to construe any portion of the act of 1921 as recognizing a liability on the part of the state to pay losses sustained by persons who were prevented from growing cotton under previous acts would render unconstitutional such portion of the act.

In passing upon the question first at issue a brief résumé will be useful of the legislation relating to the pink boll worm.

The first was the act of 1917. It provided for ·the establishment of noncotton zones from which it would be unlawful to transport cotton or its products, except under certain conditions, and in which it would be unlawful to grow cotton. It authorized the destruction of growing cotton in infested fields. It provided for the assessment by three disinterested citizens of the value of any cotton field so destroyed, and upon their report the state comptroller should issue his warrant upon the state treasurer for the amount so assessed, which was payable out of any funds not otherwise appropriated. For any citizen who · was dissatisfied with the estimate of damages thus assessed the right was given to appeal to any court of competent jurisdiction. This act made no provision for the redress of persons who were prevented from growing cotton.

The second act was that of 1919, and was in substance a re-enactment of the previous law, except as to matters of detail. While it provided for the assessment of damages for cotton destroyed, it made no provision for compensating those who had been prevented from growing cotton upon their lands.

The act of 1920 was an amplified re-enactment of the previous law with additional provisions. Unlike the two preceding acts, it for the first time recognized the right to compensation of those who had been prevented from growing cotton upon their land, and fixed the measure of their compensation upon the basis of the rental value of the land. It created the Compensation Claim Board, whose duty it should be to determine compensation due persons who had been prevented from growing cotton. For any claimant dissatisfied with the award of the Board the right of appeal was granted to any court of competent jurisdiction in Travis county. The damages of persons whose cotton had been destroyed was assessed by a citizen committee as before. The sum of $50,000 was appropriated to "be used in paying compensation and damages which may become due under the provisions of this act."

There is nothing in the act of 1920 to indicate that it was intended to have a retro-

spective effect, and it is not contended by appellants that it had such effect.

The act of 1921, the present law, is in many respects very similar to the law of 1920.

It provided for the noncotton and regulated zones, for the destruction of infested cotton and payment for same, for a pink boll worm committee to assist in establishing the noncotton zones. It also provided for remunerating persons who were prevented from growing cotton, and created the same kind of Compensation Claim Board as the previous law. This law did away with the citizens' committee of the previous laws, and placed the duties of that committee to determine the damages for cotton destroyed on the Compensation Claim Board. This board now has this duty in addition to its duties to determine the compensation to be allowed for being prevented from growing cotton. This act, as claimed by appellants, showed a further departure of legislative policy by making the law retrospective so as to allow those persons compensation for being prevented from growing cotton under previous acts of the Legislature—that is, under the acts which prevented them from growing, but did not at the time make any provision for remuneration.

Section 7 of this act gives the procedure of the Claim Board in fixing the damages for cotton destroyed, and requires the board to go on the ground and fix the damages before the cotton is destroyed. Section 9 gives the procedure of the Claim Board in fixing the compensation for being prevented from growing cotton, and the time, place, and manner of procedure is entirely different in each case.

Section 9 of this act (Vernon's Ann. Civ. St. Supp. 1922, art. 4475q) reads as follows:

"Sec. 9. As soon as practicable after the passage of this act the Governor shall appoint a Compensation Claim Board for the state, who shall serve until relieved therefrom by the Governor, whose duty it shall be to determine in the manner herein provided the measure of compensation due persons prevented from growing cotton and the damages sustained by persons having cotton condemned and destroyed as provided for herein. The said Board shall be composed of three citizens of the state residing outside any area under quarantine under the provisions of this act, at least two of whom are actually engaged in the production of cotton. Before entering upon their duties, the members of the Board shall take the constitutional oath of office required of officers of the state, and shall organize by electing one of its members chairman and the commissioner of agriculture shall act as ex-officio secretary. They shall have authority to administer oaths for the purpose of taking testimony. The concurrence of two members of the Board shall constitute legal action. The members of the Board shall receive as compensation the sum of five ($5.00) dollars per day and actual neces-

sary traveling expenses when engaged in the performance of their duties. The Compensation Claim Board shall conduct a public hearing in the county or counties from which the claims for compensation have been filed, due notice of which hearing shall be given by publication in some newspaper published in or near the county or counties in which the claimant resides, not less than ten days before the date of such hearing, and by mailing from the office of the commissioner of agriculture a letter to each 'claimant, not less than ten days before the date of such hearing, which notices shall state the time and place of each hearing. Every such claim for compensation from the state shall be made under oath, attested by two citizens of the county in which the claimant resides, upon blanks to be furnished by the commissioner of agriculture, and except when the claim is for compensation for losses under previous acts, shall be filed in the office of the commissioner of agriculture not later than November 15 of the year for which claim for compensation is made. Claims for compensation for losses incurred under previous acts shall be filed within ninety days after this act takes effect, but no such claim shall be paid out of any appropriation made herein. Every such claim shall state:

"1. The name and postoffice of the claimant.

"2. The location of the farm upon which the claim is based.

"3. The total acreage of all cultivated crops produced in the year in which such claim is presented.

"4. All other information deemed essential by the said Compensation Claim Board for the performance of the duties devolved upon them by this act.

"Each allotment of compensation shall be evidenced by a written order, entered in a permanently bound book kept by the board in the office of the commissioner of agriculture, and a certified copy of each allotment shall be given the claimant. If any claimant is dissatisfied with the action of the Claim Board on his claim, he shall have the right within six months after the decision of the Claim Board to make application to the district court of the county of which he is a resident or in which his cotton was destroyed or in which he was prevented from growing cotton and have the action of the Claim Board reviewed by such district court. If the state, acting through the commissioner of agriculture, is dissatisfied with any such decision of the Claim Board, it shall likewise have the right to resort to said court for such review."

In the first two acts provision was made for reimbursing those whose cotton had been destroyed. In the last two acts provision was made for the redress of those parties, and also for those who were prevented from growing cotton. In all of the acts claims arising out of the destruction of cotton are referred to as "damage" or "damages," whereas in the acts of 1920 and 1921 claims arising out of the fact that the landowner was prevented from growing cotton are referred to as "compensation."

In Warner, etc., v. Houston (Tex. Civ. App.) 28 S. W. 405, it was said:

"It is a familiar rule of statutory construction that when words that, by their use in one part of a statute, have a definite and fixed meaning, are used in a subsequent part of the statute, their fixed and definite meaning will attach to them. Words repeatedly used in a statute will bear the same meaning throughout, unless the contrary intention appears. Suth. St. Const. §§ 255, 262."

The Compensation Claim Board was first created by the act of 1920, and it had nothing to do with assessing claims for cotton destroyed, but its function was to determine the compensation due persons who had been prevented from growing cotton.

[1] In view of the fact that the legislative acts all refer to claims originating in the destruction of cotton as "damages" and claims arising out of the prevention of cotton growing as "compensation," we are of the opinion that section 9 of the act of 1921 clearly evidences the legislative intent to compensate those who had sustained losses under the previous acts by being prevented from growing cotton upon their land. This is manifest from two portions of the section as follows: "Except when the claim is for compensation under *previous acts*," and "claims for compensation for losses incurred under *previous acts* shall be filed." (Italics ours.)

This view is strengthened by the evident interpretation placed upon the law by the Thirty-Eighth Legislature, for in the Appropriation Act for the payment of miscellaneous claims against the state is this item:

"To pay various and sundry parties amounts due each by reason of the loss of cotton crops and being deprived of the privilege to plant and grow cotton on account of noncotton zones established by the state to prevent the spread of the pink boll worm as per claims approved by the Compensation Claim Board appointed by the Governor, by authority of the Acts of the Thirty-Seventh Legislature, chapter 41, section 9, page 125, and said claims now on file in the office of the commissioner of agriculture, and being for the years 1918–1919 and 1920.... $439,946.50.

See chapter 25, p. 189, Acts 38th Leg. 3d Called Sess.

[2] Furthermore, in the brief of appellant it is stated, and the correctness of the statement is not challenged, that the Compensation Claim Board soon after its organization under the act of 1921 held hearings at Austin, considered and allowed numerous claims for compensation for losses sustained by persons who had been prevented from growing cotton in the years 1918, 1919, and 1920, and nearly one-half million dollars of such claims allowed and paid in 1923. Furthermore, the order of the Board rejecting the appellant's claim was not based upon any infirmity in the law but upon the finding of fact that appellants had grown cotton in 1919, which had been destroyed and same paid for, and that they had not in good faith obeyed the Governor's proclamation. The courts, of course, are not bound by the construction of the act of 1921 by the Compensation Claim Board, but in case of doubt as to the proper construction of the law the Board's interpretation as evidenced by its administration of the law is entitled to due weight.

For the reasons indicated we are of the opinion that this action is maintainable under the law of 1921.

But it is insisted by appellees that the construction thus placed upon the act of 1921 renders it unconstitutional, because in conflict with section 51, art. 3, section 6, art. 16, section 49, art. 3, and section 44, art. 3, of the Constitution. These sections of the Constitution provide that:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public money to any individual, association of individuals, municipal or other corporation whatsoever." Section 51, art. 3.

"No appropriation for private or individual purposes shall be made." Section 6, art. 16.

"No debt shall be created by or on behalf of the state, except to supply casual deficiencies of revenue, repel invasion, surpass insurrection, defend the state in war, or pay existing debt." Section 49, art. 3.

"The Legislature * * * shall not grant * * * by appropriation or otherwise, any amount of money out of the treasury of the state, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." Section 44, art. 3.

[3] The law under which appellants were prevented from using their land for cotton culture was an exercise of the police power. It was necessary for the protection of the cotton industry of the state from the spread of a menace which would have been disastrous in its consequences. It is well known that much of the agricultural land of this state is wholly unadapted to the profitable growing of anything except cotton, and to deprive the owners of such land of the right to grow it in cotton practically destroys its usefulness and value. In the exercise of the right of eminent domain private property may not be taken without compensation therefor, whereas, in the exercise of the police power the use of property may be restricted or it may even be destroyed and no legal liability arise to compensate the owner therefor. Keller v. Corpus Christi, 50 Tex. 616, 32 Am. Rep. 613; Railway Co. v. People, 212 Ill. 103, 72 N. E. 219; Commonwealth v. Plymouth Coal Co., 232 Pa. 141, 81 Atl. 148.

But it is nevertheless true that under proper conditions a moral obligation may arise

to compensate an owner for the destruction of, or restriction in the use of, his property, in the exercise of the police power; an obligation which right and justice imperatively demand that the state recognize and discharge. Claims so recognized and paid by the state are not gifts or gratuities, and are not prohibited by section 51, article 3, or section 6, article 16. Weaver v. Scurry County (Tex. Civ. App.) 28 S. W. 836; Chambers v. Gilbert, 17 Tex. Civ. App. 106, 42 S. W. 630; State v. Elliott (Tex. Civ. App.) 212 S. W. 695; U. S. v. Realty Co., 163 U. S. 427, 16 Sup. Ct. 1120, 41 L. Ed. 215; Oswego & S. R. Co. v. State, 226 N. Y. 351, 124 N. E. 8; Miller v. Dunn, 72 Cal. 462, 14 Pac. 27, 1 Am. St. Rep. 67.

[4] The obligation to reimburse landowners for losses sustained by the operation and administration of the laws enacted to prevent the spread of the pink boll worm is not a "debt created by or on behalf of the state." within the purview and inhibition of section 49, article 3.

[5] Passing now to a consideration of section 44, article 3, and to the objection that the construction placed upon the act of 1921 renders it obnoxious to this provision of the Constitution it is a complete answer to this to say that the act does not grant any money for the payment of claims of the nature here considered. The act expressly provides that no claim should be paid out of any appropriation therein made. The act provides the method by which the merits of claims for compensation may be ascertained and the amount assessed, but appropriates no funds for the payment thereof. This observation also applies to the objections urged under section 51, article 3, and section 6, article 16.

To us it seems that, by the use of the term "pre-existing," the meaning of section 44, article 3, is rendered quite obscure, but in any event such provision could have no application to an appropriation made subsequent to 1919 for the payment of losses sustained by persons in the situation of appellants, for the reason that the claim arose out of the operation and administration of the acts of 1917 and 1919, and those laws are the "pre-existing laws" upon which a valid appropriation subsequently may be made.

[6] Upon the views expressed there is no merit in the position of appellee that the suit in effect is a suit against the state and not maintainable without the state's consent. The state's consent is given in section 9 of the act of 1921, wherein it granted dissatisfied claimants the right to resort to the district court and have the action of the Board reviewed.

For the reasons indicated the exceptions were improperly sustained.

Reversed and remanded.