## Barrier Pillars in Coal Mines

DeLaney, Deputy Attorney General, November 14, 1946.—We have your request asking us to define precisely the purpose for which barrier pillars are required to be established along property lines of coal lands in the anthracite region. The answer to this is found in section 10 of article III of the Anthracite Mine Law of June 2, 1891, P. L. 176, 52 PS §264, reading as follows:

"It shall be obligatory on the owners of adjoining coal properties to leave, or cause to be left, a pillar of coal in each seam or vein of coal worked by them, along the line of adjoining property, of such width, that taken in connection with the pillar to be left by the adjoining property owner, will be a sufficient barrier for the safety of the employes of either mine in case the other should be abandoned and allowed to fill with water; such width of pillar to be determined by the engineers of the adjoining property owners together with the inspector of the district in which the mine is situated, and the surveys of the face of the workings along such pillar shall be made in duplicate and must practically agree. A copy of such duplicate surveys, certified to, must be filed with the owners of the adjoining properties and with the inspector of the district in which the mine or property is situated."

Did the legislature intend that the barrier pillar described be established and maintained for purposes

other than the holding back of water that might accumulate in either one or the other mine?

Any doubt which may have existed that the legislature intended a pillar should be established for purposes other than that of preventing water flowing from one mine to another was clarified by the Supreme Court of Pennsylvania in the case of Commonwealth v. Plymouth Coal Co., 232 Pa. 141 (1911), which was affirmed by the Supreme Court of the United States in 232 U. S. 531 (1914). In the Pennsylvania Supreme Court decision the court said (p. 143):

"It might, perhaps, be well argued that the legislature did not intend to impose upon the owners the burden of leaving a boundary pillar of unmined coal where it clearly appears to be unnecessary for the safety of the employees. If none at all were needed it would seem idle for the inspector and engineers to fix a width of, say, one foot, for the sake, merely, of literal compliance with the statutory obligation of leaving a pillar of some width. If, therefore, we may apply the maxim that the law does not require a vain thing, there is room for the construction that, in vesting in the inspector and engineers the power to determine how wide the barrier pillar should be to secure safety, the intent of the law making power was to also empower them to say, if such be the fact, that the safety of the men does not require a barrier pillar of any width at all. But, be that as it may, it is evident that the act does not warrant a mine owner in refusing to permit his engineer to participate in determining the question of the width of, or the need for, a barrier pillar simply because he, the mine owner, does not consider one necessary. In our opinion, the law requires such a pillar to be left, unless the inspector and engineers, after due examination of the premises and consideration of the subject, determine that none is needed to secure the safety of the men employed in either mine in case the other should be abandoned and allowed to fill with water."

At page 150 of the same opinion the court restates the reason for leaving the pillar, namely, to prevent the flooding of mines:

"The act does not transfer the right to mine out the coal from the owner to some one else, for the public benefit, but prohibits that right from being exercised by anyone—that is, destroys it, to prevent a possible calamity, to-wit, the flooding of mines, and to protect the lives of that class of the general public whose safety would be thereby endangered, and, incidentally, to conserve the mine property of the owners themselves."

To contend that the law makes it obligatory on the adjoining owners to leave a pillar of coal in each seam for purposes other than preventing the flow of water from mine to mine, and that such pillars shall be of sufficient width to support a water pressure developed in case either mine is allowed to fill with water, despite the advice of engineers and district inspector to the contrary, would constitute a result that is absurd and unreasonable. If the legislature did intend that the purpose of the pillar should include such things as the prevention of ventilation interruption, the movement of gases from mine to mine and the like, it would not have established a standard based upon water pressure for the calculation of the width of a pillar needed to withstand any head of water would be far greater than that required merely to separate a ventilating system. To require the same width of pillar in both cases would constitute an unreasonable waste of coal.

The acts sets up a tribunal consisting of the engineers of the adjoining property owners, together with the inspector of the district in which the mine is situated, for the purpose of establishing barrier pillars. They are directed by law to determine the width of all such pillars established, and the legislature has laid down a factor which must be considered by the tribunal when calculating the required width of a pillar, namely,

the water pressure which might be created if and when a mine "should be abandoned and allowed to fill with water". Therefore, in all cases where this legally established factor cannot possibly exist a pillar is not required.

For the above reasons it is our opinion, and you are accordingly advised, that the legislature intended that the barrier pillars described in the section here cited, are to be established and maintained only if the engineers and district inspector deem them essential in consideration of any safety purpose.