See WW-78, WW-45 and
~~WW-145~~x



# THE ATTORNEY GENERAL

## OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

Overruled by State of Texas v
City of Dallas
and
State of Texas vs.
City of Austin

August 26, 1957

Honorable D. C. Greer
State Highway Engineer
Texas Highway Department
Austin 14, Texas

Opinion No. WW-236

Re: The legality of the use of
State and Federal Highway funds
for the payment of the costs
of relocating utility facilities
located on public highways or
city streets which form a part
of the National System of Inter-
state and Defense Highways, un-
der the provisions of House Bill
No. 179, Acts of the 55th Legis-
lature, Regular Session, 1957.

Dear Mr. Greer:

You have requested an opinion of this office as to the
legality of the use of State and Federal Highway funds for the
payment of the cost of relocating utility facilities located on
public highways or city streets, which form a part of the Na-
tional System of Interstate and Defense Highways, under the pro-
visions of House Bill No. 179, Acts of the 55th Legislature,
Regular Session, 1957. Your request concerns the legality of
the use of these funds under the following conditions:

"1. Privately-owned utility facilities inside
of cities, occupying the right of way of a city
street.

"2. Cooperatively-owned utility facilities un-
der the same conditions.

"3. Municipally-owned utility facilities under
the same conditions which are proprietary functions
of the cities.

"4. Municipally-owned utility facilities under
the same conditions which are governmental functions
of the city.

"5. Privately-owned utility facilities occupy-
ing the right of way of the public highway outside
of the limits of a city.

"6. Cooperatively-owned utility facilities un-
der like conditions and locations.

"7.   Municipally-owned utility facilities oc-
cupying the right of way of a public highway out-
side the limits of a city."

Before we discuss the legality of the use of State and
Federal funds under each of the seven conditions we shall set
forth certain facts and points of law which we believe are
applicable and controlling in all cases.

Section 4A of House Bill No. 179 provides in part:

"Sec. 4A.  Whenever the relocation of any
utility facilities is necessitated by the im-
provement of any highway in this State which has
been or may hereafter be established by appro-
priate authority according to law as a part of
the National System of Interstate and Defense
Highways, including extensions thereof within
urban areas, such relocation shall be made by
the utility at the cost  and expense of the State
of Texas provided that such relocation is eligi-
ble for Federal participation.  Reimbursement of
the cost of relocation of such facilities shall
be made from the State Highway Fund to the util-
ity owning such facilities, anything contained
in any other provision of law or in any permit,
or agreement or franchise issued or entered into
by any department, commission or political sub-
division of this State to the contrary notwith-
standing.  The term 'utility' includes publicly,
privately, and cooperatively owned utilities en-
gaged in furnishing telephone, telegraph, com-
munications, electric, gas, heating, water, rail-
road, storm sewer, sanitary sewer or pipeline
service.  . . . ."

It will be noted that Section 4A of House Bill 179, as
set forth above, states that "such relocation shall be made by
the utility at the cost and expense of the State of Texas pro-
vided that such relocation is eligible for Federal participa-
tion."   (Emphasis ours)

70 Stat. 374, 23 U.S.C.A., Section 162(a), (Sup. 1956),
the 1956 Federal Aid Highway Act, states in part:

". . . . . Provided, That Federal funds shall
not be apportioned to the States under this Sec-
tion when the payment to the utility violates
the law of the State or violates a legal con-
tract between the utility and the State."

Thus, the provisions of House Bill No. 179, when construed in the light of the 1956 Federal Aid Highway Act, as is required by Section 4A of House Bill No. 179, require us to examine the laws of the State of Texas for any violation which might result as a consequence of the expenditure of the State and Federal Highway funds involved in your request.

Section 51 of Article III of the Constitution of Texas provides in part as follows:

"The Legislature shall have no power to make any grant or authorize the making of any grant of public monies to any individual, association of individuals, municipal or other corporations whatsoever; . . . ." (Emphasis ours)

It is our opinion that the above quoted Section of the Constitution of Texas must ultimately be applied to each of the seven circumstances set forth in your request and that if a grant of "public monies" is in fact involved in any of these cases, then the use of State and Federal Highway funds would violate the law of the State of Texas and therefore be unlawful under the provisions of Section 4A of House Bill No. 179, Acts of the 55th Legislature, Regular Session, 1957.

It is our further opinion that the State has the prerogative under its police power to force the removal of all of the utilities in question, subject only to the requirement that if there is a taking of a compensable property right, then there must be adequate compensation. City of San Antonio v. San Antonio St. Ry. Co., 39 S.W. 136 (1896, writ ref.)

It is well settled law in Texas that, where there is a reasonable exercise of police power, the use of property may be restricted or the property may even be destroyed, and there is no legal liability on the part of the State to compensate the owner. Houston & T.C.R. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648 (1905); Keller v. Corpus Christi, 50 Tex. 614 (1879); Ellis v. West University Place, 141 Tex. 608, 175 S.W. 2d 369 (1943).

On the other hand, if a compensable property right is involved then Section 17 of Article I of the Constitution of Texas would require that the municipality or other corporation be reimbursed as a result of the "taking" of their property.

In so holding, we are not unmindful of the early decision of the Supreme Court of Texas in H. & T.C. Ry. Co. v. City of Dallas, 98 Tex. 396, 84 S.W. 648 (1905) in which it is stated that the police power of the State is not to exceed the

duties of the State to provide for the relative needs of the people, and if property rights have been invaded under the guise of this power in an unreasonable or arbitrary manner then it may become necessary for the courts to inquire as to the existence of facts to support the power and to protect these rights under the provisions of the Constitution.

Nor are we unaware of the holdings of the Texas Courts of Civil Appeals in the case of City of Beaumont v. Priddie, 65 S.W. 2d 434, (Tex. Civ. App. 1933, Dismissed as moot in 95 S.W. 2d 1290, 1936); and Kilpatrick v. Compensation Claim Board, 259 S.W. 164 (Tex. Civ. App. 1924, no writ history).

The Court in the Priddie case held that though the Railroad had the duty to bear the cost of the grade separation involved, the interest of the State, as representative of the people, was such that the expenditure of public funds to help bear the expense is a ligitimate governmental function and is not within the provisions of Section 51 of Article III of the Constitution of Texas, and that the State may properly make adjustments of expenses "as the peculiar equities of each situation may in its judgment dictate." The Court in its decision relied entirely on cases from without this jurisdiction, and the point has never been before the Supreme Court of Texas.

The Court in the Kilpatrick case held that a moral obligation to compensate might in proper cases be sufficient to allow compensation, and that in such cases the claims involved are not prohibited by Section 51 of Article III of the Constitution of Texas.

This point in the Kilpatrick case was specifically overruled in Austin National Bank v. Sheppard, 123 Tex. 272, 71 S.W. 2d 242 (1934) where the Court, after citing the Texas cases relied on the Kilpatrick case, said:

". . . We have carefully examined these authorities, and in our opinion none of them support the holding that a mere moral obligation will support an appropriation of state money to an individual."

Inasmuch as the holding of the Court in the Priddie case has never been passed upon by the Supreme Court of Texas, along with the fact that the latter court in the Sheppard case has in clear terms stated that a "mere moral obligation" will not support an appropriation of state funds to an individual; it is our opinion that an equitable or moral claim will not support the grant of public monies to any municipality or other corporation when such grant would otherwise fall within the prohibitions of Section 51 of Article III of the Constitution of Texas.

Your request would require us to apply the principles set forth above to general hypothetical fact situations.  We do not feel that it is possible to render an adequate opinion under such circumstances, and will, therefore, restrict our opinion to these general principles of law until such time as we have before us actual fact situations to which they may be applied.  For this reason we shall not attempt to answer the seven questions presented in your request at this time.

## SUMMARY

State and Federal Highway funds may be used to pay the cost of relocating facilities of public utilities located within the rights of way of public highways or city streets, which form a part of the National System of Interstate and Defense Highways, under the provisions of Section 4A of House Bill No. 179, Acts of the 55th Legislature, Regular Session, 1957, when the relocation involves a "taking" of property so as to come within the provisions of Section 17 of Article I of the Constitution of Texas.

Very truly yours,

WILL WILSON
Attorney General of Texas

By s/Wayland C. Rivers, Jr.
    Wayland C. Rivers, Jr.
    Assistant

WCR:pf:jl:wb:wc

APPROVED:
OPINION COMMITTEE

H. Grady Chandler, Chairman
J.C. Davis, Jr.
C.K. Richards
W.V. Geppert
John Reeves
Mary Kate Wall

REVIEWED FOR THE ATTORNEY GENERAL
BY:   Geo. P. Blackburn