GENERAL MOTORS ACCEPTANCE CORPORATION v. MRS. JANE Y. McCALLUM, SECRETARY OF STATE.

No. 4601. Decided November 21, 1928.
(10 S. W., 2d Series, 687.)

*Phillips, Townsend & Phillips,* and *Black & Graves,* for relator.

Relator claims that the maximum fixed in the statute, $2,500.00, applies to the total of all permit fees required of a foreign corporation, and that, in determining the amount payable in connection with a particular amendment to the charter, credit must be allowed on account of amounts previously paid.

A foreign corporation was required, under the Act of 1907, to pay a permit tax measured *solely* by the amount of its entire capital stock, wherever employed. This statute was held unconstitutional in Looney, Attorney General v. Crane Company, 245 U. S., 178. In earlier, as well as in later cases, the Supreme Court has held valid statutes exacting permit and franchise taxes from foreign corporations, measured by the amount of their capital stock, where there was a definite maximum limitation of the amount of the fee or tax. Such limitation has been treated by the Court as showing an absence of intention on the part of the State to tax the *entire* business of the corporation, including its business in interstate commerce and business conducted locally in other States. See Baltic Mining Co. v. Massachusetts, 231 U. S., 61; International Paper Co. v. Massachusetts, 246 U. S., 135; Locomobile Co. v. Massachusetts, 246 U. S., 146; Cheney Brothers Co. v. Massachusetts, 246 U. S., 147.

With the rules announced in these and other cases in mind, the Legislature enacted the Act of 1917 (Chapter 85, General Laws, 1917, page 169).

The plainly disclosed intention of the Legislature was: To base the filing fee exacted of all corporations upon the *amount* of the entire capital stock, the fee never to exceed *in any event* the sum of $2,500.00.

Under respondent's construction of the Act, a corporation coming into the State originally with a capital of $100,000,000.00 would pay a filing fee of only $2,500.00. Another corporation engaged in the same character of business with only $10,000,000.00 capital and building up this capital by successive amendments, as has the Relator, would pay not less than $10,000.00 in filing fees. Under this construction, the amount of the fee or tax depends not upon the amount of the capital stock but upon how the capital was acquired —and this fact is not even referred to in the statute and furnishes no part of the statutory schedule or test. The Act as construed by the Secretary of State would violate the rules formulated and applied by the Supreme Court of the United States, touching the admission of foreign corporations. Looney, Attorney General v. Crane Co., 245 U. S., 178; International Paper Co. v. Massachusetts, 246 U. S., 135, 142; Locomobile Co. v. Massachusetts, 246 U. S., 146; Cheney Brothers Co. v. Massachusetts (and six companion cases), 246 U. S., 147; Alpha Portland Cement Co. v. Massachusetts, 268 U. S., 203; Airway Electric Appliance Corp. v. Day, 266 U. S., 71.

It is submitted that, thus construed, the statute would violate the rule announced in Looney, Attorney General v. Crane Company, and followed and emphasized in later cases. In any event, its validity, tested by that rule, would present a very grave question.

The construction of the statute advanced by the respondent ought not to be adopted by this Court because such construction will render the applicable statute violative of Section 2 of Article 8 of the State Constitution, reading as follows: "All occupation taxes shall be equal and uniform upon the same class of subjects within the limit of the authority levying the tax."

We submit that the so-called filing fee exacted of foreign corporation is not a fee but is a tax. Under our Constitution, it is a tax exacted for the exercise or enjoyment of a privilege and is, therefore, a license or occupation tax. Cooley on Taxation, fourth edition, Section 33; City of St. Louis v. Spiegel, 175 Mo., 145; City of

St. Louis v. Consolidated Coal Co., 113 Mo., 83; Hoefling v. City of San Antonio, 85 Texas, 288.

The so-called filing fee was expressly declared by the Supreme Court to be a tax, in St. Louis Southwestern Railway Company of Texas v. Todd, Secretary of State, 94 Texas, 632-634. See, also, Albert Pick & Co. v. Jordan (California), 146 Pacific, 506, and the cases there elaborately reviewed; State v. T. & P. Railway Co., 100 Texas, 278-281; Texas Co. v. Stephens, 100 Texas, 628; Fire Association v. Love, Commissioner, 101 Texas, 376; Kansas City Life Insurance Co. v. Love, 101 Texas, 531-533; State ex rel. Gen. Elec. Co., 140 Pac. 82; Looney v. Crane Co., 245 U. S., 178; International Paper Co. v. Massachusetts, 146 U. S., 135; Airway Elec. App. Co. v. Day, 266 U. S., 71; State v. Railway Co., 100 Texas, 163.

*Claude Pollard,* Attorney-General, and *Paul D. Page Jr.,* Assistant, for respondent.

Having the absolute power of excluding the foreign corporation the State may, of course, impose such conditions upon permitting the corporation to do business within its limits as it may judge expedient; and it may make the grant or privilege dependent upon the payment of a specific license tax, or a sum proportioned to the amount of its capital. However it may be regarded, it is the condition upon which a foreign corporation can do business in the State, and in doing such business it puts itself under the law of the State, however that may be characterized. Baltic Mining Co. v. Massachusetts, 231 U. S., 68, 34 S. Ct., 14, 58 L. Ed., 127; Kansas City, Ft. S. & M. Ry. v. Kansas, 240 U. S., 227, 36 S. Ct., 261. That the filing of amendments to the charters of foreign corporations may be prescribed and enforced by the state is elementary. That such filings are separate and distinct transactions is clear. The permission of this State to a corporation to be a corporation in the State of Texas constitutes a transaction in its essence contractual. The permission of the State of Texas to be one corporation for a period of ten years is not and cannot be construed to be the permission of the State of Texas to be a different corporation for a fraction of that period. The corporation which amends its charter changes the terms of its contract with the State of Texas, and to obtain a right which it did not acquire by the terms of the original contract must be liable for an additional imposition. The fundamental error made by Relator is in the assumption that by obtaining a permit to do

business it has obtained the right to do business not for itself as it then is, but has obtained this right to do business for whatever it may choose to make itself in the future.

What then was the intention of the Legislature in enacting this law? Was it that the maximum limitation upon any filing fee to be collected should be Twenty-five Hundred Dollars, or was it that the maximum of the sum total of all filing fees should be Twenty-five Hundred Dollars? If the latter, why did not the Legislature so say? The language of the statute is clear. It does not say that "in no event shall the sum total of such fees exceed the sum of Twenty-five Hundred Dollars," but it says in unmistakable terms that "in no event shall such fee exceed the sum of Twenty-five Hundred Dollars." In other words, it is clear that the Legislature contemplated separate fees for separate transactions.

Respondent submits that the language of the statute clearly expresses the construction for which Respondent contends. Viewed in the light most favorable to Relator, the statute is "doubtful," and in such cases departmental construction, says Judge Gaines expressing an undoubted rule of the courts, "is entitled to great weight." Respondent submits that the construction placed upon this statute for almost a decade by successive Secretaries of State and changing Attorneys General is in the language of Judge Gaines "entitled to great weight." Not once since its enactment has any Attorney General questioned it. It was passed upon specifically in an opinion approved under the administration of the present Chief Justice of the Supreme Court, when Attorney General, which opinion was written to the Secretary of State by Assistant Attorney General E. F. Smith on August 23rd, 1921, and is Departmental Opinion No. 2375, found in Book 56, at Page 160 of the Original Opinions of the Attorney General.

MR. JUDGE SPEER delivered the opinion of the Commission of Appeals, Section B.

Relator is a corporation chartered under the laws of the State of New York. In January, 1920, it applied for and received a permit to do business in Texas in accordance with the statute which now is represented by Chapter 19, Title 32, Revised Civil Statutes, 1925. At that time its capital stock authorized, subscribed and paid up aggregated the sum of $2,000,000. In June, 1921, in accordance with the requirements of Article 1537 (1925), it filed with the Secretary of State an authenticated copy of an amendment whereby

its authorized capital stock (subscribed and paid up) was increased to $4,000,000, and in connection therewith paid to the Secretary of State the sum of $2,040.00 as filing fees. In November, 1922, it tendered to the Secretary of State an authenticated copy of an amendment, whereby its authorized capital stock was further increased to $4,800,000.00, and in connection therewith tendered payment of the sum of $460.00 as filing fees; this last sum was received by the Secretary of State, but upon the insistence that it was not a sufficient amount. In May, 1923, copy of another amendment whereby the capital stock was further increased to $6,000,000.00 was tendered for filing, but no filing or permit fee was tendered; filing was refused. In February, 1924, copy of the fourth amendment whereby the capital stock was further increased to $7,600,000.00 was tendered for filing, but no payment of further fee was made or offered, and the Secretary of State refused to file this copy. In April, 1924, copy of a fifth amendment increasing the capital stock to $9,000,000.00 was tendered, but no payment of any further fee was made or offered, and the filing of this was refused. On January 20, 1926, the corporation tendered copies of all the amendments and demanded that they be filed by the Secretary of State. No further payment of fees was made or offered, the corporation insisting that since it had already paid as much as $2500.00 in connection with the filing of copy of its original charter and amendments it had paid the maximum named in the statute; the Secretary of State refused to file the copies thus tendered. Thereafter relator sought permission, and on April 19, 1926, secured leave, to file this proceeding in mandamus against the Secretary of State, and herein seeks an order compelling her to file copies of the amendments without further payment of fees or charges.

The statutes as shown in the revision of 1925 are substantially the same as those in force at the several times mentioned and will, in any event, control the question here presented for determination.

Article 1529 provides:

"Any corporation for pecuniary profit, except as hereinafter provided, organized or created under the laws of any other State, or of any territory of the United States, or of any municipality of such State or territory, or of any foreign government, sovereignty or municipality, desiring to transact or solicit business in Texas, or to establish a general or special office in this State, shall file with the Secretary of State a duly certified copy of its articles of incorporation; and thereupon such official shall issue to such

corporation a permit to transact business in this State for a period of ten years from the date of so filing such articles of incorporation. If such corporation is created for more than one purpose, the permit may be limited to one or more purposes."

Articles 1530 and 1531 provide for certain information to be furnished to the Secretary of State as a guide to that official in the matter of issuing such permit. Succeeding articles define the rights of such corporations under the permit.

Article 1537 declares:

"Each foreign corporation, after a permit has been granted to do business in this State, shall immediately file with the Secretary of State a certified copy of any amendment or supplement to its original articles of incorporation when any such amendment or supplement to its original articles of incorporation is filed in the state, territory or foreign country under whose laws such corporation is incorporated."

These articles are embraced, as heretofore stated, in Chapter 19, of Title 32, of our latest revision. This Chapter relates to Foreign Corporations.

In Chapter 2, Title 61, concerning "Fees of Office," there is Article 3914, in part as follows:

"The Secretary of State is authorized and required to charge for the use of the State the following other fees: * * * Each foreign corporation that files with the Secretary of State a certified copy of its articles of incorporation and any amendments thereto and obtains a permit to do business in this State, or which shall hereafter obtain a permit to do business in this State, that shall subsequently file with the Secretary of State a certified copy of any amendment or supplement to its articles of incorporation, shall pay to the Secretary of State as filing fees the following: Fifty dollars for the first ten thousand dollars of its capital stock actually subscribed, and ten dollars for each additional ten thousand dollars or fractional part thereof; provided that in no event shall such such fee exceed twenty-five hundred dollars; * * *."

The contention of relator is, that under these statutes it has paid to the Secretary of State all fees or charges properly collectible; while, on the other hand, the respondent contends that each separate filing of an amendment subsequent to the original filing, is a separate "event" within the meaning of the statute entitling the department to charge upon the basis of ten dollars for each additional ten thousand dollars of authorized capital stock,

and that the limitation of $2500.00 refers only to the increased capital stock represented in such subsequent filing.

In order to determine these respective contentions, it is necessary to consider the nature of the exactment required by the State of foreign corporations desiring to transact business within our territory. The article first quoted makes clear that where such corporation desires to transact or solicit business in Texas or to establish a general or special office in this State, it shall apply to and receive from the Secretary of State "a permit to transact business in this State." A private corporation has no right to transact its business in the State without the authority evidenced in such way as the State may direct. A corporation being an artificial person has only such powers as are conferred by its charter and can only transact its business in the manner and in the territory permitted by law. That the State may charge a price for the right to thus transact the corporation's business within its territory can not be gainsaid. The right is everywhere recognized. The price charged by the State for the exercise of such right, whether denominated "charge," "purchase price," "fees," "franchise tax," or what not, nevertheless is a tax upon the right to do business in the State. That such charges and fees are "taxes" has been frequently decided or assumed by the United States Supreme Court. Looney v. Crane Co., 245 U. S., 178, 62 L. Ed., 230; International etc. Co. v. Massachusetts, 246 U. S., 135, 62 L. Ed., 624, Ann. Cases, 1918 C, 617; Locomobile Co. v. Massachusetts, 246 U. S., 146, 62 L. Ed., 631; Air-way etc. Corp. v. Day, 266 U. S., 71, 69 L. Ed., 169; Alpha Portland etc. Co. v. Massachusetts, 268 U. S., 203, 69 L. Ed., 916; and also by our own Supreme Court; State v. Galveston etc. Co., 100 Texas, 153, 97 S. W., 71; Texas Co. v. Stephens, 100 Texas, 628, 103 S. W., 481; Kansas City etc. Co. v. Love, 101 Texas, 531, 109 S. W., 863.

It is argued by counsel for respondent that the fees are filing fees and do not constitute a tax. If the question were an open one (which it is not) we would unhesitatingly hold that the statutes contemplate a charge "for the use of the State" for the right to do business in the State and in no sense contemplate a mere filing fee for the Secretary of State. The fact that the charges or fees exacted bear no relation whatever to the services performed by the Secretary of State, and the further fact that such services as a filing requirement are identical in all cases without regard to the amount

of the capital stock of the corporation, furnish convincing proof that the charges are in the nature of a tax and not a filing fee.

Now such charges being a tax, under the constitutional requirement that all taxes must be uniform the interpretation permitting discrimination for the right granted can not be allowed without destroying the statute.

The purpose of the law being to place a tax upon the right of foreign corporations to do business within our borders, it must be interpreted in the light of constitutional limitations as to uniformity, and when thus interpreted it is plain, we think, that in all cases, whether upon one original filing or upon subsequent filing or filings of a copy or copies of charter or charter amendments, no more can be charged or collected than the maximum of $2500.00 named in the statute. We think the language "in no event" means that under no circumstances can the applicant for a permit to transact business in the State be charged more than the maximum named.

It is significant that it becomes the duty of the Secretary of State, when a certified copy of the articles of incorporation has been filed and that officer has been satisfied by the showing made by the applicant that a permit shall be issued, good for a period of ten years, and that thereafter when such charter has been amended or supplemented, that a certified copy of such amendment or supplement shall be immediately filed with the Secretary of State. There is no discretion whatever left with the Secretary of State as to such supplemental filing. It is a requirement of the law for the protection of the public dealing with the corporation. The statutes do not contemplate a new permit or even an amendment of the permit previously issued. There is nothing to indicate that the Secretary of State has any authority whatever to revoke, amend, or supplement the permit previously issued. This is a matter for judicial cognizance in the absence of statutory power in the Secretary of State.

The relator, for its protection in the transaction of its business under its permit, is entitled to have its amendments duly filed by the Secretary of State. The duty to file is a plain ministerial act.

It follows from what we have said that we think the mandamus prayed for should be issued and we accordingly so recommend.

The opinion of the Commission of Appeals is adopted and the mandamus awarded.

*C. M. Cureton*, Chief Justice.