and actually contributed and paid the full cost of the insurance.

In Whitaker v. Hawley, 25 Kan. 674, 37 Am. Rep. 277, Judge Brewer, afterwards a Justice of the Supreme Court of the United States, states the law to be that, where a tenant has covenanted to pay rent and also to keep the premises insured for the lessor's benefit, and the premises are destroyed and the insurance money collected by the lessor, this absolves the tenant from further liability for the payment of rent.

It is insisted that Whitaker v. Hawley is not authority here, because there the leased premises were destroyed through no fault of the tenant, whereas here it is claimed that the fire was the result of the tenant's fault and negligence. Defendant in error says in his brief that under the common law, if a tenant contracted to rent a building for a given time, and even though the building was destroyed, he was still liable for rent; he says, further, that this doctrine has been abrogated to a certain extent under the modern practice, but no case holds that the one guilty of wrongful act which caused the destruction of a building is relieved of any obligation.

Conceding this to be true, the obligation is to pay the damages caused by the wrongful act, which in this case means the value of the destroyed property; how it is paid is no concern of the party damaged. One of the purposes of carrying insurance is to provide against accident or negligence which may result in damage; in the agreement between lessor and lessees, it was in contemplation of the parties that the lessor should be indemnified against loss by fire, whether accidentally or negligently caused.

Georgetown Water, Gas, Electric & Power Co. v. Neale, 137 Ky. 197, 125 S. W. 293, is helpful in this consideration. The Georgetown Company contracted with the city to furnish and maintain a certain water pressure for fire protection. The company negligently failed to maintain the pressure. Neale's stable burned, and he collected insurance on the stable. The Court of Appeals of Kentucky said that the plaintiff had two contracts protecting him against loss of his property, one with the water company for fire protection and another with the insurance company insuring him against loss from fire. He was entitled to be made whole, and, when he has collected on one of his contracts a part of his loss, he can only collect on the other the remainder.

We attach no importance to the suggestion of defendant in error that the double collection—of insurance from the insurance company and the value of the building from the lessees—is of no concern to the latter, but is purely a matter between Powell and the insurance company; that company's rights being under a subrogation feature of the policy giving the company the right to have the insurance money returned to it in event Powell collects the full value of the building from the alleged wrongdoer (lessees).

The insurance company is not a party to this suit; the policy referred to is not in the record, and its terms therefore not before the court. Certainly Powell cannot, under such a state of facts, assert rights, if any, the insurance company may supposedly have.

The court erred in sustaining the exception to that portion of the defendants' answer alleging collection by plaintiff of insurance money and in sustaining objections to the proof thereof.

The judgments of the district court and Court of Civil Appeals are reversed, and the cause remanded for trial.

Opinion Adopted by the Supreme Court May 2, 1934.

**AUSTIN NAT. BANK OF AUSTIN v. SHEPPARD, Comptroller of Public Accounts, et al.**

**No. 1764—6607.**

Commission of Appeals of Texas, Section A. May 2, 1934.

White, Taylor & Gardner and Black & Graves, all of Austin, and Thompson, Knight, Baker & Harris, of Dallas, for relator.

James V. Allred, Atty. Gen., and Sidney Benbow, Asst. Atty. Gen., for respondents.

CRITZ, Commissioner.

This is an original mandamus proceeding instituted by Austin National Bank as relator against George H. Sheppard, state comptroller, and Charley Lockhart, state treasurer, as respondents. The facts are undisputed. They are as follows:

At all times, including and since March 7, 1919, Barber Asphalt Company has been a foreign corporation, duly incorporated under the laws of West Virginia, with a permit to do business in this state. On said date the company filed with the secretary of state of this state its application for a permit to do business in Texas. This application was accompanied with a certified copy of its charter, and all amendments thereto up to this time, as required by law. On the above date the capital stock of such company was $7,000,000, and it paid to the secretary of state a filing fee or tax of $2,500. This was the maximum fee or tax required by law to be paid by foreign corporations. On payment of the above fee or tax, the secretary of state, on the date above mentioned, issued to the asphalt company a permit to do business in this state.

About March 31, 1922, the asphalt company amended its charter, and increased its capital stock from seven million to ten million dollars, and duly filed such amendment in the office of the secretary of state of West

244

Virginia; whereupon that officer approved such amendment and issued his certificate showing his action.

In due time, after the filing and approval of the above amendment in West Virginia, the asphalt company tendered to the secretary of state of this state a certified copy of its amended charter, with a request that same be filed in his office as required by our law. When the amended charter was tendered to him, the secretary of state demanded an additional filing fee of $2,500, and refused to receive or file such amendment unless and until such fee was paid. The asphalt company protested the payment of such fee, and contended that it was not due to be paid under our law, and that the secretary of state was acting under a mistake of law in making the demand. The protest of the asphalt company was unavailing, and it then paid the fee.

After the happening of the above events, it was determined by our Supreme Court that: "Having received a permit to do business in the State, good for ten years, on its compliance with the statutes (Rev. Stats. 1925, ch. 19, Title 32) and having paid therefor and on the filing of subsequent amendments increasing its capital stock, fees amounting to $2500, based on amount of such original capital stock and increase, the corporation was entitled to have filed by the Secretary of State further amendments increasing such stock, without payment of further charges based on such increase. This duty of the Secretary being merely ministerial it is here enforced by mandamus."

The above holding is quoted from the syllabus in the case of General Motors Acceptance Corporation v. McCallum, 118 Tex. 46, 10 S.W.(2d) 687.

From the above it is evident that the asphalt company was entitled to have its amendment filed without the payment of the second fee of $2,500, and the secretary of state acted under a mistake of law in refusing to file such amendment until the additional fee was paid. It is evident, therefore, that the transaction resulted in the state receiving money into its treasury that it did not own and was not entitled to receive.

It appears that the asphalt company presented its claim for the refunding to it of the above $2,500 to the claims committee of the Forty-Third Legislature. The committee approved the claim and included same in the Miscellaneous Claims Bill of that Legislature. This bill was duly passed by the Legislature and approved by the Governor, and is now in effect if it is a valid act. H. B. No. 919, page 816, c. 237, Acts Reg. Sess., 43d Leg. 1933. The above claims bill contains numerous items, some of them refunding taxes of like character as this, and some making appropriations to pay claims of different characters.

After the above act became effective, the comptroller issued his warrant to cover the above appropriation drawn on the general revenue fund and payable to the asphalt company in the sum of $2,500. The asphalt company duly assigned the warrant to relator, and it is now the legal and equitable owner and holder of the same. The bank presented the warrant to the treasurer for payment, which was refused by that officer on the ground that the comptroller had instructed him not to pay same, and on the further ground that the Attorney General had advised that such warrant was invalid. This mandamus proceeding followed.

The respondents have duly answered, and contend that the appropriation on which this warrant was issued is unconstitutional, illegal, and void, for reasons which we will now discuss and decide.

■ Respondents contend that this warrant and the appropriation upon which it is based are unconstitutional and void because, under the undisputed facts, the Legislature has singled out the asphalt company and a number of other corporations asserting claims of a like class, and allowed their claims, while at the same time it refused to make appropriations to pay claims of the same class presented by numerous other corporations. The respondents contend that such facts render this appropriation class legislation in contravention of section 3 of article 1 of our state Constitution. We take the facts alleged to be true.

In our opinion, the above contention should be overruled. Of course, if it should be held that the Legislature has power to make an appropriation to pay this claim, it must follow that it has power to pay every other claim of the same class; but the mere fact that the Legislature may make an appropriation to pay one or more claims of a class, while at the same time it fails to appropriate money to pay other like claims, does not render the appropriation made class legislation within the meaning of section 3 of article 1 of our state Constitution.

■ Respondents contend that this appropriation is in violation of section 56 of article 3 of our state Constitution. That consti-

tutional provision deals with local or special laws. Obviously this appropriation is not a local law. The terms "special" and "local" are used in the same sense in this constitutional provision. Lastro v. State, 3 Tex. App. 363.

■ Respondents contend that this appropriation is in violation of section 44 of article 3 of our state Constitution. This presents a very important question. The constitutional provision involved reads as follows: "Sec. 44. The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, not provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into, for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

So far as applicable to this case, the above constitutional provision may be read as follows: "The Legislature * * * shall not grant * * * by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law."

It will be noted that the above constitutional provision applies to "any individual." Obviously a private corporation is "any individual" within its meaning.

■ By its express words the constitutional provision under consideration in no uncertain terms prohibits the Legislature from appropriating state money to "any individual" unless such appropriation shall have been provided for by a "pre-existing law." We interpret this to mean that the Legislature cannot appropriate state money to "any individual" unless, at the very time the appropriation is made, there is already in force some valid law constituting the claim the appropriation is made to pay a legal and valid obligation of the state. By legal obligation is meant such an obligation as would form the basis of a judgment against the state in a court of competent jurisdiction in the event it should permit itself to be sued. Nichols v. State, 11 Tex. Civ. App. 327, 32 S. W. 452

(writ ref.); State v. Haldeman (Tex. Civ. App.) 163 S. W. 1020 (writ ref.); State v. Wilson, 71 Tex. 291, 9 S. W. 155.

In connection with the above, the case of Kilpatrick v. Compensation Claim Board (Tex. Civ. App.) 259 S. W. 164, seems to hold that a mere moral obligation will authorize an appropriation by the Legislature. No writ was applied for in that case, and it never received the sanction of this court. The Kilpatrick Case cites Weaver v. Scurry County (Tex. Civ. App.) 28 S. W. 836; Chambers v. Gilbert, 17 Tex. Civ. App. 106, 42 S. W. 630; and State v. Elliott (Tex. Civ. App.) 212 S. W. 695. We have carefully examined these authorities, and in our opinion none of them support the holding that a mere moral obligation will support an appropriation of state money to an individual.

■ As already noted, the constitutional provision under discussion uses the term "pre-existing law." It is the contention of respondents that such term means a direct "pre-existing statutory law." Of course, if we should give this constitutional provision such a construction, we would be compelled to strike down this appropriation. Relator does not even contend that there existed any direct statutory law authorizing this appropriation at the time it was made. The relator, however, does contend that there existed at the time this appropriation was made a "pre-existing law" authorizing its payment. In regard to this matter, relator advances the proposition that the state legally owed the asphalt company the refund of this money at the time this appropriation was made under the common law. It is then pointed out that under article 1, R. C. S. of Texas, the common law is expressly made the law of decision in this state where it is not inconsistent with our Constitution and laws. It is our opinion that a common-law right is a right under a "pre-existing law" within the meaning of the constitutional provision under discussion here. State v. Elliott (Tex. Civ. App.) 212 S. W. 695 (writ ref.).

We shall now proceed to determine whether this claim was supported by "pre-existing law" at the time this appropriation was made. By this we mean we will now determine whether this claim was a legal obligation against the state at such time. In determining this question, we deem it proper to announce certain applicable rules of law. They are as follows:

■ (1) A person who voluntarily pays an illegal tax has no claim for its repayment.

246

26 R. C. L. p. 455, § 411; City of Houston v. Feeser, 76 Tex. 365, 13 S. W. 266; Galveston City Co. v. City of Galveston, 56 Tex. 486; Gaar, Scott & Co. v. Shannon, 52 Tex. Civ. App. 634, 115 S. W. 361 (writ ref.), and authorities cited on page 364. This case was affirmed by the United States Supreme Court, 223 U. S. 468, 32 S. Ct. 236, 56 L. Ed. 510.

▉ (2) A person who pays an illegal tax under duress has a legal claim for its repayment. In this connection it is held in some jurisdictions that a taxpayer cannot maintain an action to recover taxes illegally exacted after the money has gone into the treasury and been paid out by the disbursing officers, but we think the sounder rule is to the contrary. 26 R. C. L. p. 454, § 410; Commonwealth v. Boske, 99 S. W. 316, 30 Ky. Law Rep. 400, 11 L. R. A. (N. S.) 1106, and note. In such instances the money never becomes the property of the state as against the real owner.

▉ (3) Duress in the payment of an illegal tax may be either express or implied, and the legal duty to refund is the same in both instances. 26 R. C. L. p. 457, § 413.

▉ (4) When the statute provides that the taxpayer who fails to pay the tax shall forfeit his right to do business in the state, and have the courts closed to him, he is not required to take the risk of having his right to resort to the courts disputed and his business injured while the invalidity of the tax is being adjudicated. 26 R. C. L. p. 458.

▉ (5) In the absence of a specific statute to the contrary, the fact that an illegal tax is or is not paid under protest is of no importance. 26 R. C. L. p. 459, § 414.

▉▉ Under article 1529, R. C. S., this company was required to file with the secretary of state a certified copy of its charter. This it did. This entitled it to transact business in this state for a period of ten years from the date of such filing. Under article 3914, this company was required to pay a filing fee or tax of $2,500 when it originally filed its articles of incorporation. Under article 1537 this company was required to file with the secretary of state the amendment to its charter above described. Under article 1536 this company was compelled to file the above amendment or forfeit its right to do business in this state or to maintain suits in the courts of this state.

The fee of $2,500 paid for filing the amended charter was demanded and paid while the asphalt company's ten-year permit to do business was in full force. It did not legally owe such fee. General Motors Acceptance Corporation v. McCallum, supra. If the asphalt company had refused to pay such fee, it could not have gotten its charter amendment filed without resorting to the courts, and would have run the risk of having its right to do business in this state and its right to resort to the courts of this state called in question during the litigation. Also during such period it would have run the risk of having its business greatly hampered and injured. Under such a record we hold that the asphalt company paid this tax or fee under implied duress, and not as a volunteer. We further hold that under the rules of law above announced the state is legally liable to repay this tax so illegally demanded and collected.

Finally, we wish to say that we do not intend to intimate that the secretary of state committed any intentional wrong in exacting the payment of this fee or tax. At the time he did so the McCallum Case, supra, had not been decided by the Supreme Court, and he acted under a mistake of law, but in good faith.

The mandamus is granted as prayed for.

*Opinion Adopted by the Supreme Court May 2, 1934.*