ບບ,



# THE ATTORNEY GENERAL
# OF TEXAS

## AUSTIN, TEXAS

PRICE DANIEL
ATTORNEY GENERAL

July 20, 1949

Hon. Tom M. Miller
County Attorney
Young County
Graham, Texas

Opinion No. V-856

Re: Whether certain
school districts
are "dormant" as
defined in Article
VIII, S.B. 116,
Acts 1949.

Dear Sir:

We refer to your inquiry regarding the
above subject, which reads substantially as follows

I

In Young County, Loving C.S.D. No. 42
and Murray C.S.D. No. 16 contracted with
Graham I.S.D. for the school years, 1947-48
and 1948-49. Graham I.S.D. maintained and
operated schools in the Loving School and
the Murray School both years.

Question: Are the Loving and Murray
school districts "dormant" as that term is
defined in Article VIII of S.B. 116.

II

In Young County, South Bend C.S.D.
No. 23 and Tonk Valley C.S.D. No. 5 con-
tracted to Graham I.S.D. for the school
years 1947-48 and 1948-49. Graham I.S.D.
maintained and operated schools in the
South Bend and Tonk Valley school buildings
in the year 1947-48, but no school was
maintained in those buildings during school
year 1948-49.

Question: Are the South Bend and
Tonk Valley school districts "dormant" as
that term is defined in Article VIII?

### III

In Young County, Monument C.S.D. No. 2, Red Top C.S.D. No. 37, Lone Oak C.S.D. No. 21, Farmer C.S.D. No. 4, Mt. Pleasant C.S.D. No. 20 have contracted to the Graham I.S.D. for the past several years and no school has been maintained in either of these districts for the past two or more years.

Question: Are the Monument, Red Top, Lone Oak, Farmer and Mt. Pleasant districts "dormant" as that term is defined in Article VIII?

One needs only to consider the provisions in Article VIII to determine what is meant by dormant school districts as that subject is covered in the consolidation provisions of S.B. 116, Acts 1949. That article specifically provides that the term "dormant" as used therein shall mean:

"... any school district that fails for any two (2) successive years subsequent to 1946-1947 school year, to operate a school in the district for the race having the greater number of enumerated scholastics in the district."

Such article further specifically provides:

"The provisions herein for the consolidation of school districts by order of the County Board of Trustees shall be applicable only in the instances and circumstances herein enumerated, ..."

We construe this article to be applicable to any school district, common or independent, having a local board of trustees empowered to operate a school or schools within its district but which has elected or elects for any two successive years subsequent to the 1946-1947 school year as hereinafter defined not to operate a school in its district for the race having the greater number of enumerated scholastics in the district. Opinion V-855.

Thus, when a board of trustees of any such school district for any two successive years contracts its scholastics to another district, to be educated by and placed under the supervision and control of that district, it has failed to operate a school in its district during the prescribed period of time and becomes "dormant" as that term is defined in the law and subject to its consolidation provisions.

In answering your questions it became necessary for us to consider the ambiguity and apparent conflict in the terms of Article VIII. This article is ambiguous as to when the county board of trustees is authorized to consolidate "dormant" school districts. The apparent conflict in the statute arises in this way. Article VIII begins by providing that "within 30 days from the effective date of this Act" (or from and after June 8) the board is "authorized and required to consolidate each dormant district."

The Act further provides, however, that "the term 'dormant' . . . shall mean any school district that fails, for any two successive years subsequent to the 1946-47 school year, to operate a school. . . ."

Article 2903 provides that:

"The scholastic year shall commence on the first day of September. . . and end on the 31st day of August. . . ."

Under that statute, the 1946-47 scholastic year would end August 31, 1947. Two years thereafter would be August 31, 1949. So it could be argued that under the definition of "dormant" in S.B. 116, there could be legally no dormant school district until August 31, 1949.

Yet S.B. 116 says "within 30 days after the effective date of this Act" (or June 8), the board is authorized and required to consolidate each dormant district."

In the case of such ambiguity, the cardinal factor to be determined is the legislative intent. After careful consideration, it is our opinion that the Legislature intended to deal specifically with

this situation within S.B. 116; and such specific legislation for this particular purpose would control over the general statute with regard to what a "school year" is. Townsend v. Terrell, 118 Tex. 463, 16 S.W. (2d) 1063 (1929); Canales v. Laughlin, 214 S.W. 2d 451, (Tex.Sup.Ct. 1948). We are informed that the great majority of the school districts operate their schools between September and May. Some go into early June. With that period being used, that part of Article VIII, S.B. 116, which says that "within 30 days of the effective date the Board is authorized and required to consolidate" can be given effect. Thus, although the Legislature used the term "1946-47 school year," it is our opinion that the intention was to refer to the school term which commenced in the fall of 1946 and ended in the spring of 1947. It follows that a "dormant" district under the act means any district that fails for any two successive years' subsequent to the end of the 1947 spring semester to operate a school for the race having the largest number of enumerated scholastics.

We are informed by the Control Officer of the Gilmer-Aikin Program that this is the construction already given the act by a great number of school boards. He informs us that under his direction already over 1000 "dormant" districts have been consolidated. We see, therefore, that not only the State Control Officer but also many county school officers who are charged with the administration of the law have interpreted Article VIII in accordance with the conclusion expressed above. Such interpretation, of course, should receive serious consideration and is entitled to great weight.

Taking the Act as a whole, we believe that the Legislature intended that if a school district had not operated a school for the race having the greatest number of scholastics for two successive years subsequent to the school term which began in 1946 and ended in the spring of 1947, such district would be a "dormant" district under the terms thereof.

Under the facts submitted in paragraphs I, II and III of your inquiry, you advise that the named common school districts have contracted with the Graham Independent School District to educate

and operate schools for their respective scholastics for the two successive school years 1947-1948 and 1948-1949, subsequent to the 1946-1947 school year. It is our opinion that all contracting common districts named herein are dormant as that term is defined in Article VIII, S.B. 116. This result is not altered by the fact that some of the scholastics were housed in schools of the districts which contracted them out. It was the receiving district, Graham, which operated the schools for the contracting common districts, not the sending districts.

We agree with your opinion that the Texas Legislature, by S.B. 116 of the recent session, has declared these districts to be dormant.

## SUMMARY

Those districts which contracted their scholastics out to a receiving district for two successive school years, 1947-1948 and 1948-1949, are "dormant" as that term is defined in Article VIII, S.B. 116, Acts 1949, notwithstanding the fact that some of the scholastics were taught by the receiving district in schools located in the sending district.

A school district is "dormant" under the provisions of Article VIII if it fails to operate a school for the race having the greatest number of enumerated scholastics for any two successive years subsequent to the end of the school term which began in the fall of 1946 and ended in the spring of 1947.

Very truly yours,

APPROVED

ATTORNEY GENERAL OF TEXAS

*Price Daniel*
ATTORNEY GENERAL

By *Chester F. Ollison*

Chester E. Ollison
Assistant

CEO:amm