

# THE ATTORNEY GENERAL

# OF TEXAS

### AUSTIN 11, TEXAS

**WILL WILSON**
**ATTORNEY GENERAL**

January 13, 1960

Honorable Robert S. Calvert    Opinion No. WW-780
Comptroller of Public Accounts
Capitol Station                Re: Whether the Comptroller
Austin, Texas                      is authorized to issue
                                   warrants in payment of
                                   claims filed under H.B.
                                   22, Sec. 1A  56th Leg.
                                   3rd C.S., relating to
                                   delinquent taxes and
                                   sales under the Veterans'
Dear Mr. Calvert:                  Land Program

By recent letter you advise:

"I have two claims filed with this depart-
ment in accordance with the terms and provisions
of Section 1A of House Bill 22, Third Special
Session of the Fifty-sixth Legislature of the
State of Texas, each claim certified to and
signed by the Chairman of the Veterans' Land
Board requesting: (a) that warrants be issued
to the two taxing agencies named; (b) that
warrants be issued in the name of the veteran
who made payment on the delinquent taxes and
whose name appears in the next to the last
paragraph of the certificate attached. (The
certificate is enclosed.)

"I am attaching hereto a copy of these two
claims for your examination and, after you
have examined the same, I will thank you to
advise this department whether or not I am
authorized to issue warrant in payment of
same. If these are in fact and in law valid
claims against the State of Texas the appro-
priation is sufficient for warrants to issue
in payment of the two claims."

In 1955, the Veterans' Land Board asked the Attorney General
for an opinion on several questions relating to forfeiture of
contracts for purchase of land under the Veterans' Land Act.

In answer to these questions, Attorney General John Ben Sheppard in Opinion No. S-183, rendered on December 12, 1955, held in the pertinent part:

> "10. In the event that delinquent taxes have accrued against a tract of land being purchased through the Veterans' Land Program and the Veteran's contract is forfeited and the land is resold by the Board, as provided in the Veterans' Land Act, the purchaser of the land at the second sale takes the land free from all past delinquent taxes. In such case there is no lien upon the land by reason of the prior delinquent taxes, and a personal judgment for such taxes could be secured only against the original veteran."

Relying upon enumerated holding No. 10, the Veterans' Land Board, acting through its agents and representatives, advertised that land forfeited under the Act and held for re-sale "will be sold free and clear of any tax encumberances."

In 1958, the San Antonio Court of Civil Appeals, in the case of State v. Bexar-Medina-Atascosa Counties W.I. Dist., 310 S.W. 2d 641, held that the liens for water district taxes, flat rate assessments, and bond retirement assessments charged against land in the hands of an original veteran purchaser were not extinguished upon forfeiture of the purchase contract, but were enforceable against the land in the hands of a subsequent purchaser from the Veterans' Land Board. The Supreme Court of Texas refused an application for writ of error in the case on May 21, 1958.

Prior to the decision in the Bexar-Medina case, the Veterans' Land Board made a number of re-sales of forfeited land to purchasers who relied on the representation concerning taxes. Since the decision, some purchasers have paid outstanding taxes to prevent foreclosure; in other cases, taxes accruing against property while in the hands of the original purchaser remain unpaid, and constitute a lien against the land. In order to rectify the inequities inherent in the situation, the 56th Texas Legislature passed House Bill 22, which provides:

"For the payment of the claims listed
below, there is hereby directed to be paid
out of the sum appropriated and set aside
by the General Appropriation Bill for the
Biennium September 1, 1959--August 31, 1961,
for the payment of itemized claims and judg-
ments, an amount not to exceed the amounts set
forth opposite the names of the following
Military Veterans respectively, towit:

/Here follows list of claims/

"Said payments shall be received in full
satisfaction of all claims and demands of
said named veterans, respectively, against
the State of Texas arising out of the resale
by the Veterans Land Board, under the provisions
of Article 5421m, Revised Civil Statutes, as
amended, of various tracts of land and the
purchase thereof, respectively, by said named
veterans upon representation based on a legal
construction of the applicable law, which con-
struction was overruled by the Supreme Court
of Texas, that such tracts were sold free of
any lien for ad valorem taxes, bond taxes, flat
rate assessments, water charges, and special
assessments levied by any municipality or
political subdivision of the State. Said pay-
ments shall be made as and when the Chairman of
the Veterans Land Board certifies to the Comp-
troller: (a) the name of the veteran; (b) a
brief description of the property purchased;
(c) the date of the initial contract of sale
was forfeited by the Board; (d) the amount of
the taxes and other charges specified above,
together with penalty and interest thereon
and that such amounts accrued against the land
during or after the tax year in which such lands
initially were sold by the Board but not subse-
quent to the tax year in which such initial
contracts were forfeited, all pursuant to the
provisions of Article 5241m, Revised Civil
Statutes, as amended; and, (e) whether in fact
said amounts have been paid by the veteran or
are still owing and unpaid to the agency or
official charged by law with the collection
thereof. If said amounts have been paid by
the veteran the Comptroller shall issue the

> State's warrant in the name of the veteran
> making such payments and deliver said warrant
> to the Veterans Land Board for transmittal
> to the veteran; if, however, said amounts are
> still due and owing to the agency or official
> charged with the collection thereof, the
> State's warrant shall be issued in the name
> of such agency or official and delivered to
> the Veterans Land Board for transmittal to
> such agency or official.  The Comptroller
> shall issue the warrants provided for by
> this section in the amounts certified by
> the Chairman of the Veterans Land Board
> without the necessity of submission to or
> approval by any other Official of this State,
> the requirements of any other section of this
> Act to the contrary notwithstanding.  The
> Veterans Land Board shall, in transmitting
> said warrants as above provided, keep an
> accurate record of each transmittal."

You have submitted with your opinion two types of claims under
H.B. 22, which calls for determination of a two-fold question:

(1) Does a taxing authority have a valid claim against
the State for taxes against land forfeited and resold under
the Veterans' Land Act which accrued while the land was in
the hands of the original purchaser.

(2) Does a subsequent purchaser from the Veterans' Land
Board have a valid claim for reimbursement for payment of
taxes which accrued while the property was in the hands of
the original purchaser?

### Merger of Tax Liens

In order to clearly delineate the problem presented, it
is necessary to briefly revisit the question of merger.  The
Bexar-Medina case, for the first time in Texas, appears to
forge a dominant line of authority.[1]  Under this case, and prior

---

1.
The prior decisions of Texas Courts on the question of merger
of tax liens of one taxing authority upon acquisition of title
by another taxing authority are anything but consistent.

consistent decisions, the following propositions may be deemed established:

1. Tax liens of cities, schools, counties, the state, and other taxing authorities are of equal dignity. State v. Bexar-Medina-Atascosa, etc., supra; Lubbock Independent School District v. Owens, 217 S. W. 2d 186 (Tex. Civ. App. 1949, error refused). (Note: In view of the Bexar - Medina case, it appears that in this regard there is no distinction between tax liens and liens for special assessments.)

2. When one taxing authority acquires title to property against which it has a tax lien, the tax lien merges with the superior title; tax liens of other authorities not sharing in the legal title are unaffected. Ibid.

3. Tax liens which are not merged are outstanding, but enforcement of them is suspended during the time the property is owned by the taxing authority and devoted to a public purpose.[2] Ibid.

---

1.(Con't.)
 See: (Childress County v. State, et al., 92 S.W. 2d 1011 (Tex. Sup. Ct. 1936); and compare the broad language used to fortify the decisions in Childress County v. Schultz, 199 S.W. 2d 860 (Tex. Civ. App. 1946), and City of Marlin v. State, 205 S.W. 2d 809 (Tex. Civ. App. 1947), with the result in Gerlach Mercantile Co. v. State, 10 S.W. 2d 1035 (Tex. Civ. App. 1928). Note also that in State v. Stovall, 76 S.W. 2d 206 (Tex. Civ. App. 1934, error refused) the court held that state land sold to a private purchaser, and subsequently retaken by the state upon forfeiture of the contract of sale, was not subject to seizure and sale for taxes accruing in favor of a school district while the land was in the hands of the private purchaser. Though this much of the decision is consistent with what is now the weight of authority, the court perpetually enjoined the enforcement of the school district's lien, thereby indicating that the Court considered such lien extinguished.
2.
 As a corollary to this proposition, it should be noted that under the authority of Art. XI, Sec. 9, Tex. Const., the property is not subject to taxation during the time it is owned by the State or a political subdivision thereof and held for public purposes. See: City of Abilene v. State, 113 S.W. 2d 631 (Tex. Civ. App. 1937, error dism.).

4. Liens such as are described in No. 3 above may be enforced against the property when resold to a private individual.

In light of the foregoing propositions, it is evident that the State's liens for ad valorem taxes against the properties in question merged with its superior legal title upon reacquisition of the properties by the Veterans' Land Board. The liens in favor of the counties,[3] school districts, water improvement districts, etc., for taxes or assessments, were not extinguished, but merely suspended during the time that the property was held for re-sale. Consequently, the question of liability here posed concerns only liens for taxes of assessments in favor of the latter authorities.

These appropriations are valid unless same are in violation of section 44 of Article 3 of our State Constitution. The constitutional provision involved reads as follows:

> "The Legislature shall provide by law for the compensation of all officers, servants, agents and public contractors, now provided for in this Constitution, but shall not grant extra compensation to any officer, agent, servant, or public contractors, after such public service shall have been performed or contract entered into for the performance of the same; nor grant, by appropriation or otherwise, any amount of money out of the Treasury of the State, to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law; nor employ any one in the name of the State, unless authorized by pre-existing law."

So far as applicable to this opinion, the above constitutional provision may be read as follows: "The Legislature--- shall not grant---by appropriation or otherwise, any amount

---

3.
In this connection, it makes no difference that the county is the collecting agent of the State for state ad valorem taxes. The counties obtained no interest in the State's superior legal title upon reacquisition by the Veterans' Land Board; consequently, the counties' tax liens, being of equal dignity with the State's liens, are not extinguished. (For an example of different treatment of State and county tax liens, see Childress County v. State, cited in the body of the opinion.)

of money out of the Treasury of the State, to any individual,
on a claim, real or pretended, when the same shall not have
been provided for by pre-existing law." Certain taxing
agencies of the State are "any individual" within its mean-
ing. See Austin Nat'l Bank v. Sheppard, 71 S.W. 2d 242
(Com. App. opinion adopted by Supreme Court 1934) This
case also holds that the common law as well as statutory law
constitutes "pre-existing law" within the purview of said
constitutional provision, and cites State v. Elliott (Tex.
Civ. App.) 212 S.W. 695 (writ ref.)

Section 19 (A) of Article 5421m provides:

"The resale of land which has been forfeited
under the provisions of this Act may be made
to the highest bidder; provided, however, that
sales shall be made to qualified veterans only
and under the same terms and conditions as pro-
vided elsewhere in this Act for original sales.
Such sales shall be held at such times and in
such manner as the Board may prescribe, and the
Board shall have the right to reject any and
all bids. If the successful bidder refuses to
execute a contract of sale and purchase, all
moneys submitted with his bid shall be forfeited
and deposited in the State Treasury and credited
to the Veterans' Land Board Special Fund."

The Board in advertising such lands for re-sale stated
that the lands were free and clear of all liens for taxes and
assessments. Of course the Board was relying on opinion No.
S-183 (supra) by Attorney General John Ben Sheppard, and was
laboring under a mistake of law. However, the veteran pur-
chasers in relying on such representations, calculated and
submitted their bids under a mistake of fact. Under the
common law, equity requires that relief be granted when one
party is injured by a contract entered into through a mutual
mistake as to a material fact. The Board's mistake of law
gave rise to a mistake of a material fact by it, i.e., the amount
of money to be expended by the purchaser to obtain clear
legal title, and thus the actual sales price was materially
different from what the Board believed it to be under their
mistaken conclusion of law. The Texas courts have always
recognized this principle of law.

"That a contract may be entirely rescinded
upon the ground of mutual mistake, as well as
for fraud, is well settled.  In such cases,
where the parties suppose they are bargaining
with reference to specific property which they
have in mind, when in fact it either does not
exist or is materially different from what they
believed it to be, it is very evident that
their minds have not met and concurred so as
to constitute a contract as to the real subject
matter, as it is afterwards ascertained to be
and that the conveyance of the property as it
really exists (though it may be identifed as
therein described) does not evidence the true
intention of the parties in making the contract."
Pendarvis v. Gray, 41 Tex. 326 (1874).

Here the State, acting through the Veterans' Land Board
re-sold the lands, which it believed to be free and clear of
taxes and assessment liens, to the veterans who were the
highest bidders.  These veterans calculated and submitted
their bids on the basis of the lands being unencumbered
by tax and assessment liens.  There was not a meeting of
the minds and not a valid and subsisting contract, unless
the appropriations made by the Legislature to pay these out-
standing taxes and assessments are valid. The veterans would
have the right to rescind the contracts, recover the amount
of money paid as well as monies invested in good faith in
improving the lands.  It seems however, that all the veteran
purchasers want is to be made whole and have the State to con-
vey to them what it purported to convey and what the veterans
in good faith believed they were purchasing.

The State has the right to exact strict obedience to its
laws and constitution, but it should also be the policy of
the State, and we believe it is, to deal fairly with veterans
who, in good faith, accept its offer to purchase lands be-
longing to the Veterans' Land Fund.

It is our opinion that the Legislature has the authority
to appropriate money to cure the title to any of its public
lands.  This may be accomplished by authorizing the expenditure
of appropriated money by the Attorney General in bringing and
prosecuting trespass to try title suits, or locating adverse
claimants and securing quit claim deeds, or securing necessary
affidavits of heirship, etc. and placing same of record.

Likewise, the Legislature has the authority to appropriate money to pay off and discharge valid liens or other encumbrances against its public lands, so as to have a good and marketable title thereto. The appropriations in question should have been made by the Legislature to discharge these liens prior to their resale to the veterans or they should have been discharged at the time of closing the re-sale transaction, or have been taken into consideration at the time of advertising, calculating and submitting the bids. In which case they could have been assumed by the Veterans and the contracts of resale would have resulted in a meeting of the minds and a valid and subsisting contract would have resulted.

It is, therefore, our opinion that the Comptroller is authorized to issue the warrants in question in accordance with the provisions of H.B. 22, Sec. 1A, 56th Leg. 3rd C.S. in that the appropriations in question are supported by the common law, which constitutes pre-existing law. Austin Nat'l Bank v. Sheppard. (supra)

## SUMMARY

The Comptroller has the authority to issue the warrants in question in accordance with the provisions of H.B. 22, Sec. 1A, 56th Leg., 3rd C.S.

Yours very truly,

WILL WILSON
Attorney General of Texas

By: W. V. Geppert
W. V. Geppert
Assistant

APPROVED:
OPINION COMMITTEE:
Morgan Nesbitt, Chairman

B. H. Timmins, Jr.
James R. Irion
C. K. Richards

REVIEWED FOR THE ATTORNEY GENERAL:
By: Leonard Passmore