

# THE ATTORNEY GENERAL
# OF TEXAS

JIM MATTOX
ATTORNEY GENERAL

June 5, 1990

Mr. William D. Taylor
Executive Director
Department of Commerce
P. O. Box 12728
Austin, Texas    78711

Opinion No. JM-1181

Re:    Constitutionality of appro-
priations to the Texas Department
of Commerce  and the  Comptroller
of Public Accounts to pay  former
employees and contractors of  the
Texas Conservation  Corps,  Inc.,
under   article  III,  section  44
of the Texas Constitution
(RQ-1853)

Dear Mr. Taylor:

You ask whether  the Texas  Constitution makes  invalid
two 1989 related  appropriations that  authorize payment  of
certain unpaid claims against the Texas Conservation  Corps,
Inc.   In particular you are concerned about the validity  of
the appropriations under article  III, sections 44,  50,  and
51 of  the  Texas Constitution.   Since  we hold  that  both
appropriations violate article  III, section 44,  we do  not
address  their  validity  under  any  other  constitutional
provision.

One of the  two appropriations is  a rider that  appro-
priates $150,000 from the General Revenue Fund to the  Texas
Department of Commerce [hereinafter  the department] to  pay
the unpaid wages of  former non-executive employees, program
participants, and contract laborers  of the Texas  Conserva-
tion Corps,  Inc.  [hereinafter called  the  TCC].   General
Appropriations Act, Acts 1989, 71st Leg., ch. 1263, art.  1,
at 5166  (Rider  19).  That rider  limits  amounts  paid  to
contract laborers to no more than $2,500.  Id.

The other appropriation  authorizes the Comptroller  of
Public Accounts to expend $150,000 from the General  Revenue
Fund to satisfy approved  claims of eligible former  vendors
of  the  TCC.  Id.  at  5180.   The  appropriation  to  the
comptroller also provides  that any eligible  vendor may  be
paid an approved claim to the extent that the claim does not
exceed $2,500. The amount of an approved claim in excess  of

$2,500 may be submitted to the comptroller for payment in accordance with section 403.074 of the Government Code entitled "Miscellaneous Claims." Finally the appropriation to the comptroller provides that "[a]ny balance remaining after payment of the approved claims in conformance with the provisions herein may be transferred to the appropriation for Miscellaneous Claims."[1] Id.

In 1986 and 1987 the Texas Department of Community Affairs entered into contracts with the TCC, a private nonprofit corporation, to provide job training services in accordance with section 123 of the federal Job Training Partnership Act. 29 U.S.C. § 1533 (federal funds authorized to finance agreements between state agencies, certain administrative entities and appropriate local educational agencies); see also 29 U.S.C. §§ 1501, 1551-52, 1574, 1601-05. The contracts required the TCC to establish a residential education and training program and provided federal funds to the TCC to do so. During the period covered by the contracts the Texas Department of Community Affairs was authorized by the Texas Job-Training Partnership Act to implement job-training programs such as the TCC residential program and to fund eligible job-training programs with monies received under the federal Job Training Partnership Act. Acts 1983, 68th Leg., ch. 1024, § 5(b), at 5451, (prior to amendment by Acts 1987, 70th Leg., ch. 374, § 2(b), at 1855, current version at V.T.C.S. art. 4413(52), § 5(b)).

---

1. The 1989 General Appropriations Act contains separate appropriations to the comptroller for payment of miscellaneous small claims pursuant to section 403.074 of the Government Code. Those appropriations total $1,500,000 each for the years ending August 31, 1990, and August 31, 1991. Acts 1989, 71st Leg., ch. 1263, art. 1, at 5180. Since we hold the $1,500,000 appropriations for the payment of miscellaneous claims unconstitutional to the extent that they, in conjunction with the $150,000 appropriation to the comptroller, authorize payment of claims in violation of article III, section 44, of the constitution, we do not address the question whether the comptroller may pay under the separate $1,500,000 appropriations all unpaid amounts of eligible vendors under and over $2,500 whether they are approved or not.

The Texas Department of Community Affairs in October 1987 decided to terminate its support for TCC, effective December 1987, amid charges of TCC mismanagement and embezzlement. The state paid the contractor the money due it. The responsibilities of the Texas Department of Community Affairs under the Texas Job-Training Partnership Act were thereafter transferred in 1988 to the department. Acts 1987, 70th Leg., ch. 374, § 2, at 1855; id. § 13, at 1873-74; see also Gov't Code § 481.023(c). Records available to the department show that the TCC did not pay $150,500 in compensation to approximately 150 former employees, participants, and contract laborers who had performed services under the TCC's job training program and $215,000 to various vendors who had supplied the TCC program with goods and services. The legislature has now appropriated money to give these individuals the compensation that they did not receive from the TCC.

Article III, section 44, of the Texas Constitution prohibits the legislature from making grants of money out of the State Treasury, by appropriation or otherwise, "to any individual, on a claim, real or pretended, when the same shall not have been provided for by pre-existing law." Texas courts have consistently interpreted this provision to mean that the legislature cannot appropriate funds out of the State Treasury to any individual or private corporation to satisfy a claim unless there is already in force at the time of the appropriation some valid law under which the state courts would hold the state liable for the claim in the event the state waives its immunity against suit. Texas Public Bldg. Auth. v. Mattox, 686 S.W.2d 924, 929 (Tex. 1985); Fort Worth Cavalry Club v. Sheppard, 83 S.W.2d 660, 663 (Tex. 1935); Austin Nat'l Bank v. Sheppard, 71 S.W.2d 242, 245 (Tex. 1934). Thus the claims to be satisfied by the 1989 appropriations must be legal and valid obligations of the state enforceable in the courts of this state. Attorney General Opinions JM-970 (1988); JM-17 (1983).

The requirement that a claim be supported by "pre-existing law" may be satisfied by reference either to a valid state statute or to a provision of the common law that is not inconsistent with the Texas Constitution or Texas statutes. Texas Public Bldg. Auth. v. Mattox, 686 S.W.2d at 929 (Tex. 1985); Austin Nat'l Bank v. Sheppard, 71 S.W.2d at 245-46 (Tex. 1934); State v. Steck, 236 S.W.2d 866, 869 (Tex. Civ. App. - Austin 1951, writ ref'd). A moral obligation to reimburse a party for services or goods rendered the state will not by itself satisfy the "pre-existing law" requirement of article III, section 44.

See Austin Nat'l Bank v. Sheppard, 71 S.W.2d at 245 (Tex. 1934)(limiting Kilpatrick v. Compensation Claim Bd., 259 S.W. 164, 167 (Tex. Civ. App. - El Paso 1924, no writ), to the extent it suggests otherwise); State v. Perlstein, 79 S.W.2d 143, 147 (Tex. Civ. App. - Austin 1934, writ dism'd); Attorney General Letter Advisory No. 107 (1975). Nor will reimbursement by the state for services or goods be held valid under article III, section 44, on the basis of the common law right to quasi- contractual recovery -- the right to recover the reasonable value of services or goods provided -- absent either statutory or constitutional authority for the state to contract for the services or goods and actions by the state's agents consistent with their contractual authority including all limitations on such authority. State v. Ragland Clinic-Hospital, 159 S.W.2d 105 (Tex. 1942) (no right to recover for medical services provided absent express or implied statutory authority for state agent to make contract binding on state); State v. Steck, 236 S.W.2d at 868-69 (no right to recover reasonable value for goods provided in a manner inconsistent with either the state constitution or a state statute); State v. Haldeman, 163 S.W. 1020 (Tex. Civ. App. - Austin 1913, writ ref'd) (no right to recover payment in excess of amount authorized by statute); accord Susman, Fiscal and Constitutional Limitations, 44 Tex. L. Rev. 106, 132-35 (1965).

Under the facts presented to us, we do not find a pre-existing statute that would authorize the state to incur liability for the third party claims covered by the 1989 appropriations to the department and the Comptroller of Public Accounts. Nor have you referred us to such a pre-existing statute. Although the 1986 and 1987 contracts are supported by the authorization in the Texas Job-Training Partnership Act for the Texas Department of Community Affairs to implement and fund job-training programs pursuant to the federal legislation, the Texas Job-Training Partnership Act only authorizes the earlier appropriation by the state of federal monies to fund the contracts with the TCC. Nothing in that act either expressly or by necessary implication authorizes the Texas Department of Community Affairs to reimburse the third party claimants for services and goods provided to the TCC. See, e.g., V.T.C.S. art. 4413(52), §§ 7(a) (criteria shall be prescribed for selection of local entities to administer programs), 9A(a) (authority to contract with private nonprofit corporations). We also find no express or implied authority for the Texas Department of Community Affairs to incur liability for the third party claims in the statute creating the Department of

Community Affairs and listing its rights and duties. V.T.C.S. art. 4413(201) (emphasis is on assistance to local governments).[2]

Under the facts presented to us, we do not find a pre-existing common-law right that is consistent with the narrow state statutes applicable to the Texas Department of Community Affairs and its contracts with the TCC and that would therefore impose liability on the Texas Department of Community Affairs and thus the state for the claims in issue here. For instance, we do not find in the statutes any express or implied authority to apply the common-law of third party beneficiaries to the facts of this case. Nor have you referred us to a common-law right that would be consistent with the applicable state statutes and would thus impose liability on the state in this case. See, Attorney General Opinion JM-618 (1987) (although existence of common-law right ultimately dependent upon factual determinations beyond the opinion process, availability of right under article III, section 44 is issue capable of determination as part of the opinion process).

Absent either a pre-existing statute or a common-law right consistent with the applicable state statutes, we are constrained to hold the 1989 appropriation to the department and the 1989 appropriation to the Comptroller of Public Accounts unconstitutional under article III, section 44. To do otherwise could result in unlimited state liability to third party claimants in the context of state programs funded with federal or state funds.

---

2. Furthermore, no provision of the 1986 or 1987 contract indicates that the Texas Department of Community Affairs had an express contractual or other legal obligation to the affected third party claimants. In fact both the 1986 and 1987 contracts provide that the Texas Department of Community Affairs was not liable for any third party claims that might be asserted in connection with the services to be performed by the TCC under the contracts. Both contracts also provide that the Texas Department of Community Affairs was not in any way liable to the TCC's subcontractors. Finally, neither contract nor any other facts presented to us reveal any contractual or regulatory control exerted by the Texas Department of Community Affairs over the TCC that is unusual in the context of state programs funded by federal grants.

We also conclude payment of the third party claims pursuant to the 1989 appropriations for payment of miscellaneous claims under section 403.074 of the Government Code would violate article III, section 44, of the Texas Constitution. Section 403.074 authorizes the comptroller to pay from funds appropriated for that purpose certain miscellaneous claims for which appropriations do not otherwise exist. The section prohibits the preparation of a warrant for payment of a claim unless the claim has been "verified by the attorney general as a legally enforceable obligation of the state." Gov't Code § 403.074(b)(2).

Since we hold in this opinion that there is no "pre-existing law" to justify payment of the third party claims and thus that such claims are not legally enforceable obligations against the state, payment of those claims under any 1989 appropriation, including the 1989 appropriations for miscellaneous claims, would violate article III, section 44. Thus we hold the 1989 appropriations for payment of miscellaneous claims invalid to the extent that they in conjunction with the 1989 appropriation for payment of TCC vendor claims authorize payment of the third party claims in issue here.

## S U M M A R Y

The claims of former employees and contractors of the Texas Conservation Corps, Inc., are not legally enforceable obligations against the state. Thus the 1989 appropriations by the legislature to pay those claims violate the pre-existing law requirement of article III, section 44, of the Texas Constitution and are unconstitutional.

Very truly yours,

JIM MATTOX
Attorney General of Texas

MARY KELLER
First Assistant Attorney General

LOU MCCREARY
Executive Assistant Attorney General

JUDGE ZOLLIE STEAKLEY
Special Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

RICK GILPIN
Chairman, Opinion Committee

Prepared by Celeste A. Baker
Assistant Attorney General